IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID BEHAR, M.D., | : | |
| | : | |
| Plaintiff | : | No. 1:09-CV-2453 |
| | : | |
| v. | : | (JUDGE CONNER) |
| | : | (MAGISTRATE JUDGE PRINCE) |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA, DEPT. OF | : | |
| TRANSPORTATION, ET AL., | : | |
| | : | |
| Defendants | : | |

## REPORT and RECOMMENDATION

### I. Procedural Background

Pursuant to an Order entered on August 3, 2010 (Doc. 35), the Honorable Christopher C. Conner referred the pending Motion for Judgment on the Pleadings to the undersigned for the purpose of preparing a Report and Recommendation.

Plaintiff, David Behar, M.D., commenced this action by filing a complaint in the United States District Court for the Eastern District of Pennsylvania on June 28, 2009 (Doc. 1)., challenging Commonwealth of Pennsylvania, Department of Transportation ("PennDOT") Regulations, 67 Pa. Code § 83, issued under the Vehicle Code, 75 Pa.C.S.A. §§ 1517, 1518 and 6103, which require health care professionals to report to the Department of Transportation every patient over

fifteen years of age who is affected by any of a number of listed medical conditions which could impact their ability to safely operate a motor vehicle. The complaint asserts violations of the Supremacy Clause in light of the Drug Abuse Prevention, Treatment and Rehabilitation Act, 42 C.F.R. §§ 2.1, *et seq*.; due process violations under the Fifth and Fourteenth Amendments for both vagueness and interference with the right to practice one's profession; violations of free association under the First and Fourteenth Amendments; violations of privacy rights under the Ninth and Fourteenth Amendments; and violations of both the Americans with Disabilities Act, 42 U.S.C. § 12132, *et seq*. and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) *et seq*.

Named as Defendants are the Commonwealth of Pennsylvania, Department of Transportation ("PennDOT") and Allen Biehler, Secretary of Transportation for the Commonwealth of Pennsylvania. On December 14, 2009, the action was transferred to this court inasmuch as the Secretary, as a state official acting in his state capacity, is considered a resident of the capital, Harrisburg, Pennsylvania, which is located within the jurisdictional boundaries of the United States District Court for the Middle District of Pennsylvania. (*See* Docs. 6-7).

On February 16, 2010, Defendants filed Motion for Judgment on the Pleadings (Doc. 18), and thereafter filed a supporting brief on February 19, 2010

(Doc. 21).  Plaintiff filed a Reply and a Brief in Opposition to the Motion on

March 19, 2010 (Docs. 25-26), to which Defendants filed a Reply Brief on April

16, 2010.  (Doc. 32).  The matter is now ripe for disposition.  For the reasons that

follow, it will be recommended that the Motion for Judgment on the Pleadings be

granted in part and denied in part.

## II. Factual Background

Plaintiff is a health care provider and psychiatrist licensed to practice

medicine by the Commonwealth of Pennsylvania.  PennDOT is the state authority

responsible for assessing an individual's ability to drive.  It has promulgated

regulations which require health care providers such as Plaintiff to notify it of

patients who are affected by certain conditions, as determined by the Medical

Advisory Board, which may impair their ability to safely operate a motor vehicle.

*See* 75 Pa. C.S.A. §1517, *et seq.*; 67 Pa. Code §§ 83.5 and 83.6.[1]  Failure to report

---

[1]  The relevant subsection provides:

Disqualification on provider's recommendation. A person who has
any of the following conditions will not be qualified to drive if, in the
opinion of the provider, the condition is likely to impair the ability to
control and safely operate a motor vehicle:
        *     *     *     *     *
(7) Use of any drug or substance, including alcohol, known to impair
skill or functions, regardless whether the drug or substance is
medically prescribed.

3

such individuals can result in a summary offense and fine of $25.00.[2]  Plaintiff

seeks injunctive relief by way of an order prohibiting Defendants from enforcing

the regulations.

## III. Standard of Review

Federal Rule of Civil Procedure 12(c) provides:

> After the pleadings are closed but within such time as not to delay the
> trial, any party may move for judgment on the pleadings. If, on a
> motion for judgment on the pleadings, matters outside the pleadings
> are presented to and not excluded by the court, the motion shall be

---

> (8) Other conditions which, in the opinion of a provider, is likely to
> impair the ability to control and safely operate a motor vehicle.

67 Pa. Code § 83.5(b).  Further, the reporting regulation states:

> Providers to report unqualified persons.
>
> Physicians and other persons authorized to diagnose and treat
> disorders and disabilities defined by the Medical Advisory Board
> shall report to the Department, in writing, the full name, date of birth
> and address of every person 16 years of age and older diagnosed as
> having any specified disorder or disability within 10 days, under 75
> Pa.C.S. § 1518 (relating to reports on mental or physical disabilities
> or disorders).

67 Pa. Code § 83.6.

[2]  Although referenced in the briefs as a criminal penalty, the punishment for
failure to report a potentially-impaired individual is a summary offense, which is
contained within the transportation code, not the criminal code, and which carries
a fine of $25.00.  75 Pa. C.S.A. § 6502.

treated as one for summary judgment and disposed of as provided in
Rule 56.

Fed. R. Civ. P. 12 (c).  The standard of review for a motion for judgment on the

pleadings is plenary.  Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289,

290 (3d Cir.1988).  Judgment will not be granted unless the movant clearly

establishes there are no material issues of fact, and he is entitled to judgment as a

matter of law.  Society Hill Civic Ass'n v. Harris, 632 F.2d 1045, 1054 (3d

Cir.1980).  The court must view the facts presented in the pleadings and the

inferences to be drawn therefrom in the light most favorable to the nonmoving

party.  Id.

Courts have applied the same standard of review for a motion for judgment

on the pleadings under Rule 12(c) as they do for a motion to dismiss under Rule

12(b).[3]  The standard of review used for a motion for judgment on the pleadings is

substantively identical to that of a motion to dismiss; the difference between the

two is procedural--a motion for judgment on the pleadings is filed after the

pleadings are closed, and a motion to dismiss is filed in lieu of an answer.  *See*

---

[3]  The only notable difference between these two standards is that the court
in a motion for judgment on the pleadings reviews not only the complaint but also
the answer and written instruments attached to the pleadings. 2 Moore's Federal
Practice Civil §12.38 (2004).

Woolley v. Commonwealth of Pa., No. 03-1031, 2006 WL 485850, *1 (M.D. Pa. February 27, 2006); Rose v. Bartle, 871 F.2d 331, 342 (3d Cir. 1989); Regalbuto v. City of Philadelphia, 937 F.Supp. 374, 376-77 (E.D. Pa. 1995) (stating that "[c]ourts have applied the same standard of review for a motion for judgment on the pleadings under Rule 12(c) as they do for a motion to dismiss under Rule 12(b)).

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996). First, the court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. Innis v. Wilson, 2009 U.S. App. LEXIS 12424, *4-5 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, — U.S. —, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must then determine whether the complaint states a plausible claim for relief, which is a "a context-specific task

that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557-58 (2007)).

**IV. Discussion**

Plaintiff challenges the regulations on several grounds.  Each will be addressed *in seriatim*.[4]

*(A) Standing*

Defendants contend first that Plaintiff lacks standing to bring the present action inasmuch as he has neither been charged nor threatened with a charge for failing to disclose information sought by the PennDOT regulation.  In fact, PennDOT regulation 67 Pa. Code § 83.6 has never been enforced against health care providers who fail to disclose the information regarding potentially unsafe drivers.

The requirements for Article III standing are well established, and require a plaintiff to prove: (1) injury in fact, (2) a causal connection between the injury and the challenged action, and (3) a likelihood that the injury is redressible by a favorable judicial decision.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61

---

[4] Defendants assert, and Plaintiff concedes, that the Eleventh Amendment bars Plaintiff's §§ 1983 and 1988 claims against PennDOT. *See* Doc. 26, p. 5-6.

(1992); Pa. Psychiatric Soc'y v. Green Spring Health Servs., 280 F.3d 278, 288 n.

8 (3d Cir. 2002).  A plaintiff invoking federal jurisdiction bears the burden of

establishing these elements.  *See* FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231

(1990).

A plaintiff who challenges a statute must demonstrate a realistic danger of

sustaining a direct injury as a result of the statute's operation or enforcement.

O'Shea v. Littleton, 414 U.S. 488, 494  (1974).  However, he "does not have to

await the consummation of threatened injury to obtain preventive relief.  If the

injury is certainly impending, that is enough."  Pennsylvania v. West Virginia, 262

U.S. 553, 593 (1923).  When a plaintiff "do[es] not claim that [he has] ever been

threatened with prosecution, that a prosecution is likely, or even that a prosecution

is remotely possible," he has not alleged a dispute susceptible to resolution by a

federal court. Younger v. Harris, 401 U.S. 37, 42 (1971).

However, as will be discussed later, Plaintiff can meet the standing

requirement as a third-party to challenge the regulation on behalf of his patients.

Inasmuch as Plaintiff has articulated injury to patients, *to wit.*, that as a result of

the regulation, his patients may be less truthful and less candid with him which, in

turn, may compromise their treatment, injury has been established.  Moreover, the

causation issue between the regulation and the alleged injury – patients being less

truthful and less candid with Plaintiff which, in turn, has the potential to affect

their treatment – has also been established. Finally, the prospective injunctive

relief is redressible. Consequently, the Plaintiff has established standing to bring

the present action.

### (B) Preemption[5]

The Supremacy Clause[6] invalidates all state laws that conflict or interfere

with an act of Congress. <u>Rose v. Arkansas State Police</u>, 479 U.S. 1 (1986). A

preemption analysis should begin with a recital of the analytical scheme by which

a court should be guided:

> Under the supremacy clause, federal law may preempt state law in

---

[5] Inasmuch as courts have held that the applicable federal regulation, 42 C.F.R. 2.20, which states that "no State law may either authorize or compel any disclosure prohibited by these regulations," does not give rise to a private cause of action, Plaintiff concedes that he is unable to bring a preemption challenge pursuant to § 1983. He asserts, however, that, to the extent that the complaint seeks prospective injunctive relief, he has stated a claim under 28 U.S.C. § 1331.

[6] The Supremacy Clause of the United States Constitution prohibits state actions which interfere with matters where the federal government has spoken. The seminal statement on preemption originated from Chief Justice Marshall in <u>McCulloch v. Maryland</u>, 17 U.S. (4 Wheat.) 316, 436 (1819): "States have no power ... to retard, impede, burden or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government. . . ."

any of three ways; first, when in enacting federal law, Congress explicitly defines the extent to which it intends to preempt state law; second, when even in the absence of express preemptive language, Congress indicates an intent to occupy an entire field of regulation and has left no room for states to supplement the federal law; and, finally, when compliance with both state and federal law is impossible or when state law stands as an obstacle to accomplishment and execution of the full purposes and objectives of Congress. Michigan Canners and Freezers Association, Inc. v. Agricultural Marketing and Bargaining Board, 467 U.S. 461(1984); Capital Cities Cable, Inc. v. Crisp, 467 U.S. 691 (1984).

Kentucky West Virginia Gas Co. v. Pennsylvania Public Utility Com'n, 837 F.2d 600, 605-06 (3d Cir. 1988)). "[T]he question whether a certain state action is pre-empted by federal law is one of congressional intent." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45 (1987) (internal citations omitted).

It is not suggested herein that federal law explicitly preempts the regulation or that Congress intended, via legislation, to preempt the entire field of medical disclosures. Therefore a conflict between federal law and state law must be present for the regulation to be preempted. *See* Lozano v. City of Hazleton, --- F.3d ----, 2010 WL 3504538 (3d Cir. September 9, 2010). Such a conflict exists where either (1) the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" or (2) it is "impossible for a . . . party to comply with both state and federal law." Geier v. Am. Honda Motor Co., Inc., 529 U.S. 861, 899 (2000); Pokorny v. Ford Motor

Co., 902 F.2d 1116, 1120 (3d Cir. 1990); <u>C.E.R.1988, Inc. v. Aetna Cas. & Sur. Co.</u>, 386 F.3d 263, 268 (3d Cir.2004).

The Supreme Court has urged caution in the application of conflict preemption: "[B]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly preempt state-law causes of action." <u>C.E.R.1988</u>, 386 F.3d at 269-70 (quoting <u>Medtronic Inc. v. Lohr</u>, 518 U.S. 470, 485 (1996)). Thus, conflict preemption will be found only if the need for it is clear. <u>Pokorny</u>, 902 F.2d at 1122. "[C]onsideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law." <u>Bldg. & Constr. Trades Council of Metro. Dist. v. Assoc. Builders & Contractors of Mass./R.I., Inc.</u>, 507 U.S. 218, 224 (1993).

In the instant matter, Plaintiff claims that the PennDOT regulation is in conflict with, and preempted by, the Drug Abuse Prevention, Treatment and Rehabilitation Act, 42 C.F.R. §2.1, *et seq.*, which was subsequently incorporated under the Public Health Services Act ("PHSA"), 42 U.S.C. § 290dd-2. Under PHSA, the disclosure of medical record information for those receiving or participating in federally-assisted substance abuse treatment is restricted. Plaintiff challenges the constitutionality of the PennDOT regulation both on its face and as applied. Defendants contend, however, that there is no conflict inasmuch as the

PHSA applies only to federal substance abuse programs and operates neither to create a privilege covering any and all records of substance abuse treatment nor to prevent the disclosure of all medical information.

### 1.    *Facially*

With a facial challenge, a court can determine whether a regulation is valid simply by looking at its terms, not its particular application.  Doe v. City of Butler, P.A., 892 F.2d 315, 325-26 (3d Cir.1989) (dissent) (quoting D. Mandelker, J. Gerald, E. Sullivan, *Federal Land Use Law* § 1.04 at 1-10).  A statute is not facially unconstitutional unless "no set of circumstances exists under which the Act would be valid." Khouzam v. Attorney General of U.S., 549 F.3d 235, 258 (3d Cir. 2008) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)). Consequently, if the regulation has any legitimate application, a facial challenge must fail.  *See* Wash. State Grange v. Wash. State Republican Party, 552 U.S.442, 449 (2008).  To defeat a facial challenge to the regulation, Defendants need "merely to identify a possible" valid application of the challenged statute. Baltimore & Ohio R.R. Co. v. Oberly, 837 F.2d 108, 116 (3d Cir.1988); California Coastal Comm's v. Granite Rock Co., 480 U.S. 572, 593 (1987).[7]

---

[7] Following recent case law in this circuit, the court declines to abandon the Salerno holding in favor of Chevron (where a facial challenge was upheld despite valid applications of the regulation) or an "undue burden" theory advanced by

Plaintiff maintains that the PHSA requires that all substance abuse treatment records be kept confidential, except in limited circumstances, set out in the Act, which do not apply to the instant case. Because the PHSA limits its application to federally-assisted substance abuse programs, there would be no conflict between it and PennDOT regulation's reporting requirement regarding individuals to whom Plaintiff provided medical services for substance abuse that were not part of a federal programs or where he treated individuals for conditions other than substance abuse treatment. Individuals in these circumstances would not fall within the scope of PHSA and therefore the medical information sought by the regulation would not be shielded from disclosure. Having articulated contexts in which the regulation is valid, Defendants have surmounted a facial challenge to the regulation.

2.    *As applied*

A statute that is not facially preempted by federal law may nonetheless be preempted as it is applied. Plaintiff argues that the unconstitutional effect can arise prior to enforcement of the regulation. Indeed, courts have allowed

---

Plaintiff. Brown v, City of Pittsburgh, 586 F.3d 263, 269 (3d Cir. 2009) (applying Salerno analysis); Good v. Borough of Shelton, 2008 WL 4454058, *6 (M.D. Pa. Sept. 30, 2008) (same); Khouzam v. Attorney General of U.S., 549 F.3d 235, 258 (3d Cir. 2008); Belistskus v. Pizzingrilli, 343 F.3d 632, 648 (3d Cir. 2003).

challenges to legal questions without requiring the plaintiff to incur the penalties of non-compliance.  <u>Amnesty Intern. USA v. McConnell</u>, 646 F.Supp. 2d 633, 649-50 (S.D.N.Y. 2009); <u>Babbitt v. United Farm Workers National Union</u>, 442 U.S. 289, 302-03 (1979) (granting standing for pre-enforcement challenge to certain provisions of statute based on "realistic danger" of enforcement where plaintiffs intended to engage in conduct "arguably prohibited by the statute"); <u>Pacific Capital Bank, N.A. v. Connecticut</u>, 542 F.3d 341, 350 (2d Cir. 2008) (finding standing for pre-enforcement challenge by national bank to state statute limiting certain interest rates where plaintiff "reasonably interpreted [the statute's] limitation as, on its face, applying to [the plaintiff]").

Defendants maintain that, inasmuch as the State has never enforced the provision through the imposition of a fine on health care providers who fail to adhere to the reporting requirement regarding impaired or disabled patients, the regulation cannot be said to conflict with federal law prior to its application.  *See* <u>Cipollone v. Liggett Group, Inc.</u>, 505 U.S. 504, 516 (1992) (holding that speculative or hypothetical conflict is not sufficient: only State law that actually conflicts with federal law is preempted).  Conceding that "the federal regulations at issue prevent physicians from disclosing information about individuals in a federally assisted alcohol and drug abuse program," Defendants contend that the

absence of an application or interpretation of PennDOT regulations has avoided the conflict with federal law.  (*See* Doc. 32, p. 9).

Defendants do not maintain that the medical record of any individual participant of a federally assisted alcohol or drug treatment program has never been turned over to PennDOT pursuant to the mandatory reporting requirement. Assuming that such information has been disclosed from a health care provider to PennDOT, a violation of the federal provisions has occurred.  It is the reporting or disclosure, not the imposition of a penalty on health care providers for their failure to report such information, that is the event that triggers an infraction of the federal regulations.

The court agrees that, to the extent an "as applied" preemption challenge can arise prior to enforcement of PennDOT's regulations, Plaintiff has stated an actual one, as opposed to a hypothetical one, by demonstrating herein that he must choose between following the PennDOT regulation by disclosing the medical record of individuals participating in a federally assisted alcohol or drug treatment program or abiding by the federal regulations requiring such information to be kept confidential.  Consequently, the Motion for Judgment on the Pleadings should be denied as it relates to Plaintiff's claim that the PennDOT regulation is preempted by federal law as applies to the disclosure of the medical record of any

individual participant of a federally assisted alcohol or drug treatment program.[8]

## (C) Vagueness[9]

Plaintiff also challenges the language of the regulation as vague.

The question presented is whether the phrase "[o]ther conditions which, in the opinion of a provider, is likely to impair the ability to control and safely operate a motor vehicle."  63 Pa. Code. § 83.5(b)(8).  Contending that he is not properly informed as to what type of opinion triggers the reporting requirement, that a health care provider may not have the qualifications to render an opinion on driving abilities and that the Medical Advisory Board is not authorized to require reporting of any conditions other that those it specifies as having been diagnosed, Plaintiff argues the regulation is impermissibly vague

A statute is "void for vagueness" if it "forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application."  <u>Connolly v. General Constr. Co.</u>, 269

---

[8]  The court recognizes that Plaintiff fails to distinguish how the permissive reporting requirement that he advances would permit disclosure of such information and/or would not conflict with federal law.

[9]  Defendants claim that while Plaintiff's claims against Biehler may be actionable under the 14th Amendment, they are not properly asserted under the 5th Amendment inasmuch as there is no federal actor.  Plaintiff does not challenge this position and, consequently, Count II should be dismissed to the extent it seeks to state a claim arising under the 5th Amendment.

U.S. 385, 391 (1926). Generally, the void-for-vagueness doctrine requires that a standard define the conduct "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983). A court must ensure that a statute or standard is fair in that it is not so vague that a party would not know what conduct is prohibited. San Filippo v. Bongiovanni, 961 F.2d 1125, 1136 (3d Cir. 1992). Thus, a statute will be found unconstitutionally vague if "men of common intelligence must necessarily guess at its meaning." Broadrick v. Oklahoma, 413 U.S. 601, 607 (1973) (quoting Connally, *supra* at 391). The inquiry is conducted on a case-by-case basis, and the party opposing the statute or standard must show that it is vague as applied to him. San Filippo, 961 F.2d at 1136.

Plaintiff first contends that the regulation sets forth no standard other than the "opinion" of the health care provider, which is inadequate to determine what reporting is required. He claims obscurity as to whether a lay or professional opinion is to be the standard, whether he is required to report non-medical conditions which may impair one's ability to drive, or whether reporting of conditions of which he is aware but which fall outside his area of expertise is mandated. Defendants maintain that the regulation is not void for vagueness,

contending that the regulation itself is instructive on what is sought from health care providers. The court agrees.

First, a person will not be deemed qualified to drive if he suffers from any listed disabilities or "[o]ther conditions which, *in the opinion of a provider*, is likely to impair the ability to control and safely operate a motor vehicle." 67 Pa. Code § 83.5(b)(8). Clearly the standard governing this opinion is the provider's professional opinion. Moreover, the phrase "likely to impair" does not require health care providers to become assessors of driving skills and abilities as Plaintiff argues. Without addressing the severity, duration or prognosis of a reportable disorder or disability, and regardless of whether a person is driving or not, the regulation merely requires health care provers such as Plaintiff to report individuals with conditions which the health care provider opines may impact the safe operation of a vehicle. Health care providers need not consider whether a condition is temporary or permanent, treatable or untreatable or whether a patient is driving or refraining from driving. Such inquiries are secondary to the presence of any condition which the provider believes may affect one's ability to safely operate a car, and the existence of such variables with respect to any impairment will not render the statute vague. This reporting requirement makes clear what information is to be provided: "Physicians and other persons authorized to

diagnose and treat disorders and disabilities . . . shall report to the Department . . . every person . . . diagnosed as having any specified disorder or disability[.]" 67 Pa. Code § 83.6. Compliance with this regulation, accordingly, requires the report of only persons diagnosed with a specified disorder or disability.

Finally, Plaintiff challenges the Medical Advisory Board's definition of reportable impairments, contending it has failed to "define" disorders by leaving to a provider's opinion non-specified disorders encompassed by the regulation. However, the Medical Advisory Board has not abrogated the authority it has been delegated, *to wit.*, to define disorders and disabilities affecting the ability to drive safely, by placing additional reporting requirements, beyond the listed and specified disorders, for those conditions a provider feels are likely to impair one's ability to drive. *See* 75 Pa. C.S.A. § 1518(a). A catch-all phrase such as "[o]ther conditions which, in the opinion of a provider, is likely to impair the ability to control and safely operate a motor vehicle" is general enough to encompass impairments which may not be listed but which nonetheless would have an effect on the ability to drive safely while also being sufficiently specific as to what is required of health care providers.

Inasmuch as "ordinary persons using ordinary common sense" would be aware or what is required, the regulation is not void for vagueness. San Filippo,

*supra* at 1136 (citing <u>Arnett v. Kennedy</u>, 416 U.S. 134, 159 (1974)). This argument should, accordingly, be rejected.

*(D) Right to Privacy*

Plaintiff contends next that the PennDOT regulation violates his right to privacy. Specifically, he argues that therapists and other health care providers must have the trust and confidence of their patients to properly treat them, and that the regulation infringes into the privacy of information contained in medical records. He further asserts that he has standing to raise the issue on behalf of those he treats.

Defendants claims that the regulation is rationally related to a compelling state interest and has only an indirect and incidental effect on Plaintiff's practice. Moreover, they maintain that any loss of business suffered by Plaintiff as a result of the regulation is not protected.

*(1)    Standing*[10]

Ordinarily, "a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." <u>Powers v. Ohio</u>, 499 U.S. 400, 410 (1991); *see also* <u>Barrows v. Jackson</u>, 346 U.S.

---

[10]  The court notes that the Defendants do not challenge Plaintiff's standing as it related to his ability to assert a privacy claim on behalf of his patients.

249, 255 (1953).  In limited circumstances, however, the Supreme Court has approved third party standing where the policies supporting the general rule are not served.  *See* <u>Singleton v. Wulff</u>, 428 U.S. 106, 114-15 (1976).  "Where rightholders are unable to raise their own rights and their relationship with the plaintiff suggests an identity of interests, courts can be more certain that the litigation is necessary and that the issues will be framed clearly and effectively."  <u>Amato v. Wilentz</u>, 952 F.2d 742, 748 (3d Cir. 1991) (citing <u>id.</u> at 114-16).

Third-party standing requires the satisfaction of three preconditions: 1) the plaintiff must suffer injury; 2) the plaintiff and the third party must have a "close relationship"; and 3) the third party must face some obstacles that prevent it from pursuing its own claims.  <u>Pennsylvania Psychiatric Soc. v. Green Spring Health Services, Inc.</u>, 280 F.3d 278, 288-89 (3d Cir. 2002) (citations omitted). A court must balance these factors to determine if third-party standing is warranted.  <u>Id.</u> at 289.

Plaintiff first asserts the regulation in question has caused injury to him by creating a dilemma of violating state law by not reporting patients who are potentially unsafe drivers or by forsaking his code of ethics which requires him to treat his patients through the exchange of candid yet confidential information. Undermining a health care provider's ability to effectively treat his patients states

sufficient injury to meet the first element of a third-party standing inquiry.

As to the second factor, Plaintiff submits that the psychiatrist-patient association is sufficiently special to permit him to advocate and be an effective proponent of his patients and their rights. Courts have recognized that the physician-patient relationship is one conferring third-party standing on physicians on behalf of patients to challenge a statute. *See* Singleton, *supra*; Planned Parenthood v. Farmer, 220 F.3d 127, 147 & n. 10 (3d Cir. 2000); Am. Coll. of Obstetricians & Gynecologists v. Thornburgh, 737 F.2d 283, 290 & n. 6 (3d Cir. 1984) (collecting cases where physicians allowed to assert patients' claims). Consequently, the court concludes that this prong is satisfied.

Finally, Plaintiff maintains that the stigma associated with mental health treatment presents an obstacle to a challenge of the PennDOT regulation by patients themselves. Such a desire to protect privacy has been found to be an impediment to litigation sufficient to meet the third factor. *See* Singleton, *supra*; Pa. Psychiatric Soc'y, *supra*. The Plaintiff has, accordingly, established third-party standing.

2.      *Patients right to privacy*

Plaintiff contends that there is a constitutional right to privacy regarding information in one's medical file(s) upon which the PennDOT regulation infringes

by requiring disclosure of certain information by health care providers.  While

recognizing such a privacy right, Defendants submit that this right is not absolute.

Citizens for Health v. Leavitt, 428 F.3d 167, 178 n.10 (3d Cir. 2005) ("[T]he

question of the scope of the constitutional right to privacy in one's medical

information is largely unresolved."); Whalen v. Roe, 429 U.S. 589, 602 (1977)

(recognizing that, despite constitutionally protected interest in avoiding disclosure

of personal matters, "disclosures of private medical information to doctors, to

hospital personnel, to insurance companies, and to public health agencies are often

an essential part of modern medical practice even when the disclosure may reflect

unfavorably on the character of the patient"); United States v. Westinghouse Elec.

Corp., 638 F.2d 570, 578 (3d Cir. 1980) ("[T]he right of an individual to control

access to his or her medical history is not absolute.").

     "[T]he Constitution embodies a promise that a certain private sphere of

individual liberty will be kept largely beyond the reach of government."

Thornburgh v. American College of Obstetricians, 476 U.S. 747, 772 (1986). This

constitutional right to privacy extends to "the individual interest in avoiding

disclosure of personal matters." Whalen v. Roe, supra at 599;  Trade Waste

Management Ass'n, Inc. v. Hughey, 780 F.2d 221, 223 (3d Cir.1985); *see also*

Kurland, *The Private I*, The University of Chicago Magazine 7, 8 (Autumn 1976)

("The concept of a constitutional right of privacy [includes] the right of an individual not to have his private affairs made public by the government."). Courts have held that medical records are clearly within this constitutionally protected sphere. *See, e.g.*, <u>Whalen</u>, 429 U.S. at 598; <u>Westinghouse Elec. Corp.</u>, 638 F.2d at 577 ("There can be no question that an employee's medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection."); <u>Shoemaker v. Handel</u>, 608 F.Supp. 1151, 1159 (D.N.J.1985) ( "There is a privacy interest in avoiding disclosure to government agents of personal medical information.").

Therefore, the court will assume that, while not fundamental, there is a constitutionally-protected right to privacy of an individual's medical information which may be implicated by operation of the regulation.  It must be determined, therefore, whether the regulation violates the privacy rights of Plaintiff's patients.

3.     *Balance of right to privacy v. state interest*

 "In recognition that the right of an individual to control access to her or his medical history is not absolute, courts and legislatures have determined that public health or other public concerns may support access to facts an individual might otherwise choose to withhold."  <u>Westinghouse Elec. Co.</u>, *supra* at 578. Accordingly, "disclosures regarding past medical history, present illness, or the

fact of treatment have been required." Id.  In instances where a reporting

requirements has been upheld include instances where the State "advanced a need

to acquire the information to. . . control threats to public health." Id.

Any privacy rights must be balanced against the legitimate interests of the

State in securing such information.  Moreover, the regulation must be narrowly

tailored to "express only those compelling state interests." McKenna v. Fargo,

451 F.Supp. 1355, 1381 (D.N.J. 1978).  Factors to be considered by a court in

determining whether an intrusion into an individual's privacy is justified include:

> (1) the type of record requested, (2) the information it does or might
> contain, (3) the potential for harm in any subsequent nonconsensual
> disclosure, (4) the injury from disclosure to the relationship in which
> the record was generated, (5) the adequacy of safeguards to prevent
> unauthorized disclosure, (6) the degree of need for access, and (7)
> whether there is an express statutory mandate, articulated public
> policy, or other recognizable public interest militating toward access.

Westinghouse Elec. Co. at 578.

Defendants argue that even if Plaintiff's patients have a cognizable right to

privacy, the Commonwealth has a compelling state interest in maintaining safe

roadways, which outweighs any privacy right raised by Plaintiff.  They contend,

further, that the regulation is rationally related to the state interest and narrowly

tailored to achieve that interest.  See McKay v. Com., 415 A.2d 910 (Pa.

Commw.1980), appeal dismissed 452 A.2d 1019 (allowing disclosure of

information obtained by psychiatrist from operator for purpose of determining operator's competency to operate motor vehicle did not violate operator's constitutional right of privacy in light of fact that, though allowing such disclosure constituted an intrusion on operator's right to privacy, such intrusion was outweighed by public interest in having incompetent drivers removed from highways).  In balancing the <u>Westinghouse</u> factors, Defendants contend only two –injury to the physician-patient relationship and public disclosure could tend to embarrass patients–weight against the intrusion into the privacy of Plaintiff's patients.  The other five elements shift the balance in Defendants favor: the information sought is not entire medical files but limited to the diagnosis of specified conditions, with some personal information such as name, address date of birth, already known by PennDOT; the disclosures are kept confidential and are used for a limited purpose with safeguards in place to prevent unauthorized disclosure; the Commonwealth need for access to this information to ensure the competency of drivers on its roads, and health care providers are arguably in the best position to provide this information; and the regulation in question was enacted pursuant to express statutory mandate to ensure the legitimate state interest of promoting the safety of Pennsylvania's roads.

Plaintiff agrees that Pennsylvania has a legitimate state interest–to promote

safe roadways in the Commonwealth–but maintains that mandatory reporting requirement is not narrowly tailored to achieve that goal. He argues, further, that there are less intrusive means to accomplish the State's objective. While suggesting that a permissive reporting requirement, as adopted in other states, would be a less intrusive means to accomplish the legitimate goal of safe roadways, Plaintiff does not specify how this optional reporting would increase road safety. Such a permissive reporting standard would place the burden of evaluating driving abilities on the physician such as Plaintiff, who has asserted that health care professionals are not assessors of driving skills. Moreover, an optional reporting standard would undoubtedly result in different assessments of similar impairments and produce less uniform outcomes throughout the Commonwealth.

Further, acknowledging that PennDOT recalled 22% of the licenses of those individuals reported under the regulation does not necessarily lead to a conclusion that the other 78% of cases impermissibly infringed on the patients' right to privacy. It may, rather, suggest that the license recall is not automatic upon a report, that reporting creates a presumption, but not a conclusion, of unfitness and/or that PennDOT engages in a review process to ensure only those truly unfit drivers are disqualified from driving.

Furthermore, the regulation is narrowly tailored to serve a compelling state interest. *See* <u>A.A. ex rel M.M. v. New Jersey</u>, 341 F.3d 206, (3d Cir.2003) (rejecting right to privacy claim because the compelling interest of the prevention of sex offenses outweighed the sex offender's right to privacy); <u>Paul P. v. Farmer</u>, 227 F.3d 98, 107 (3d Cir.2000) (same). If PennDOT instead required all drivers to submit to periodic examinations to test their competency to operate a vehicle, such a requirement would not be sufficiently narrow to achieve its interest in promoting safe driving. *See* <u>Witthoeft v. Kiskaddan</u>, 733 A.2d 623, 627 (Pa. 1999). In other words, protection of motorist and their passengers on Pennsylvania roadways is a compelling state interest and the reporting requirement of those impaired by certain conditions is narrowly tailored to serve that interest. Therefore, the regulation does not violate the privacy rights of Plaintiff's patients and this claim should be dismissed.

Finally, the court is not persuaded that the statutory psychiatrist-patient privilege[11] outweighs the legitimate state interest served by disclosure. Clearly

---

[11] The applicable statutory provision, governing the confidential communications to psychiatrists or licensed psychologists, provides:

> No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52), [FN1] to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course

this privilege is not absolute and does not prevent any and all disclosures of medical information.  The statutory privilege addresses the disclosure of medical information via testimony, rather than the type of disclosure sought by the regulation–reports to a state agency.  Moreover, "opinions, observations, and diagnosis are not protected by the privilege[.]" <u>Com. v. Moody</u>, 843 A.2d 402, 406 (Pa. Super. 2004); <u>Com. v. G.P.</u>, 765 A.2d 363 (Pa. Super. 2000).

In enacting the statutes governing the psychiatrist-patient privilege and the reporting requirement, the court cannot conclude, as Plaintiff infers, that the Pennsylvania General Assembly create an exception for information acquired within the psychiatrist-patient relationship to be exempted from the reporting requirement.   Additionally, although deference is due to the opinion of the medical community on medical issues, the issue presently raised in is not solely a medical one.  Consequently, the medical profession's approach as to the reporting of impaired or disabled patients, while informative, must be considered along with other important factors including governmental authority and public safety.

------

of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa.C.S.A. § 5944

*(E) Substantive Due Process*

Plaintiff next asserts that the PennDOT regulation violates his substantive due process rights by interfering with his ability to practice his profession. The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend XIV, § 2. The substantive component bars states from infringing upon fundamental rights that are deeply rooted in history and tradition unless the infringement is narrowly tailored to serve a compelling state interest. Washington v. Glucksberg, 521 U.S. 702, 721 (1997). When fundamental rights are not implicated or infringed, state statutes are reviewed under a rational basis test and upheld if it bears some rational relation to some legitimate end. Lawrence v. Texas, 539 U.S. 558, 588 (2003); Vacco v. Quill, 521 U.S. 793, 799 (1997); Nicholas v. Penn State University, 227 F.3d 133, 139 (3d Cir. 2000); Heffner v. Murphy, 590 F.Supp.2d 710, 723 (M.D. Pa. 2008). When applying a rational basis test to a statute, there is a presumption that the statute is valid. Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985).

The right to practice one's profession, the right Plaintiff suggests is compromised by the regulation, is not a "fundamental right." Heffner, *supra*; Meier v. Anderson, 692 F.Supp. 546, 550 (E.D. Pa. 1988). Under the "rational

basis standard," as long as the regulation is rationally related to a legitimate government interest, substantive due process rights have not been violated. Lawrence, *supra* at 578; Heffner, *supra*. The regulation need not be narrowly tailored to the legitimate end sought by the government. Koorn v. Lacey Twp., 78 Fed.Appx. 199, 202 (3d Cir. 2003). A minimum rationality standard is an extremely difficult standard for a plaintiff to meet. Knight v. Tape, Inc., 935 F.2d 617, 627 (3d Cir.1991).

Plaintiff classifies the impact of the regulation as impairing his ability to effectively treat his patients given that the regulation may obligate him to breach the confidentiality essential to the physician-patient relationship. Assuming, as Plaintiff asserts, the harmful effect the regulation has on the physician-patient relationship, it's purpose–promoting the safe operation of vehicles by competent drivers on Pennsylvania's roadways–has been found to be rationally related to a legitimate state interest. *See* Sharon v. Larson, 650 F.Supp. 1396, 1404 (E.D. Pa. 1986); McKay v. Com., 415 A.2d 910, 915 (Pa. Commw 1980). As Defendants assert, any effect the regulation has in Plaintiff's practice is an unintended, indirect and incidental consequence of the regulation not actionable as a substantive due process claim under the Fourteenth Amendment. Consequently, Plaintiff's substantive due process claim is without merit and should be dismissed.

*(F) First Amendment*

The First Amendment to the U.S. Constitution proscribes federal action "respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, ... or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  Defendants contend that Plaintiff has failed to state a claim of freedom of association under the First and Fourteenth Amendment, asserting that there is no such constitutional protection afforded the psychiatrist-patient relationship and, moreover, that the PennDOT regulation does not interfere with that association. Plaintiff, in turn, argues that the regulation compels health care providers such as himself to breech the physician-patient confidentiality, an element crucial for effective treatment.

"Freedom of association is a constitutional right guaranteed under the first amendment as a fundamental element of personal liberty." <u>Ziegler v. County of Bucks</u>, Civ. A. No. 98-4561, 1992 WL 129643, *6 (E.D. Pa. June 8,1992). The Constitution guarantees, and our courts have recognized,  a right to associate for the purpose of engaging in those activities protected by the First Amendment, such as, speech, assembly, petition for the redress of grievances, and the exercise of religion. <u>Id.</u> (citing <u>Roberts v. United States Jaycees</u>, 468 U.S. 609, 618 (1984)).

Plaintiff, maintains that a physician-patient relationship has protection under the First Amendment and state action may be enjoined where it places barriers to the full disclosure of all facts needed between these two parties. *See* <u>Conant v. Walters</u>, 309 F.3d 629 (9th Cir. 2002), *cert denied*, <u>Walters v. Conant</u>, 540 U.S. 946 (2003) (state regulation that threatened to punish physicians who spoke to their patients about the use of medical marijuana struck at core of First Amendment because recommendation itself did not constitute illegal conduct).

As Defendants observe, there are two types of associations protected by the Constitution: expressive and intimate. In <u>Roberts v. United States Jaycees</u>, 468 U.S. 609, 618 (1984), the Supreme Court identified a distinction between's one's freedom of "intimate association" and his or her freedom of "expressive association." The first type of association protects the rights of individuals to associate for purposes of engaging in activities protected by the First Amendment, such as "[a]n individual's freedom to speak, to worship, and to petition the government for the redress of grievances . . . ." <u>Roberts</u>, 468 U.S. at 622 (citations omitted) ("According protection to collective effort on behalf of shared goals is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority"). The second type protects certain close and intimate human relationships, such as family relationships.

Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh, 229 F.3d 435, 441-42 (3d Cir. 2000).

Both freedoms are firmly embedded within the Supreme Court's jurisprudence. However, only the freedom of expressive association is based upon the First Amendment. The freedom of intimate association, which is based on the Due Process Clause of the Fourteenth Amendment, is properly characterized as a substantive due process right and recognizes the right of an individual to develop deeply personal attachments with other individuals. Id. at 620. Because the right of expressive association, unlike the distinct right of intimate association, is grounded in the First Amendment, the court understands Plaintiff's present claims to be grounded within the context of expressive association.

In Boy Scouts of America v. Dale, 530 U.S. 640 (2000), the Supreme Court used a three step process to analyze expressive association claims. Pi Lambda, supra at 442. A court must first determine whether the group or, here, the physician-patient affiliation, has engaged in expressive association. If expressive association is found, the court must determine whether the state action at issue significantly affected the group's ability to advocate its viewpoints. See Dale, at 2452. Finally, state's interest implicated in its action must be weighed against the burden imposed on the associational expression to determine if the state interest

justified the burden.  *See* id. at 2456.

The initial question, therefore, is whether the physician-patient relationship, in general terms, constitutes an expressive association between the provider and those he treats.  There is no requirement that an organization be primarily political (or even primarily expressive) in order to receive constitutional protection for expressive associational activity.  The Supreme Court has made it clear, however, that there is a *de minimis* threshold for expressive activity claims.  In City of Dallas v. Stanglin, 490 U.S. 19 (1989), the plaintiffs claimed that they had an expressive associational interest in mingling at a dance hall.  The Supreme Curt concluded that, although the patrons were associating with one another, they were not engaging in First Amendment-protected expression while doing so.  "There is no suggestion that these patrons 'take positions on public questions' or perform any of the other similar activities" such as engaging in "a variety of commendable service activities" and "humanitarian service [and] high ethical standards in all vocations.  Phi Lambda, *supra* at 444 (citing id.) (in turn, quoting Board of Directors of Rotary International v. Rotary Club of Duarte, 481 U.S. 537, 548 (1987)).  Consequently, protected expression does not include *any* possible expression.  *See* Stanglin, *supra.* ("It is possible to find some kernel of expression in almost every activity a person undertakes-for example, walking down the street

or meeting one's friends at a shopping mall-but such a kernel is not sufficient to bring the activity within the protection of the First Amendment.").

Furthermore, the freedom of association doctrine is inapplicable to a physician-patient relationship.  Conant v. McCoffey, No. 97-0130, 1998 WL 164946, * (N.D. Cal. March 16, 1998).  Plaintiff contends that the the case relied upon by Defendants pre-dates the medical marijuana case of Conant v. Walters, which, as noted above, determined the state regulation prohibiting physicians from discussing the medicinal use of marijuana with their patients was properly enjoined as violative of the  First Amendment.  However, in recognizing the First Amendment protection afforded to such situations, Conant v. Walters addressed an issue of free speech, not free association.  Consequently, it is distinguishable from the holding of Conant v. McCoffey and the instant case. Additionally, the Conant v. McCoffey holding is persuasive, noting that "[t]he freedom of association privilege grows out of NAACP v. Alabama, 357 U.S. 449 (1958), a case that prohibited disclosure of NAACP membership lists. The Supreme Court grounded its decision on the importance of "group association . . . for the advancement of beliefs and ideas." Id. at *3 (quoting NAACP at 460).  The decision further observed:

> Moreover, the freedom of association cases "protect 'freedom of association for the purpose of advancing ideas and airing grievances In this case, the patients and doctors are not meeting in order to advance particular beliefs or points of view; they are seeking and dispensing medical treatment. The fact that their treatment discussions may involve the politically-charged topic of medical marijuana does not transform their relationship into the kind of advocacy association described in NAACP. For these reasons, the Court does not believe that the NAACP doctrine applies to the relationships or communications at issue.

Id. (citations omitted).

The court concludes that this reasoning is persuasive and that, despite the need for full disclosure and confidentiality in communications between a patient and his physician, a free association claim warranting constitutional protection does not lie therein. The physician-patient association fails to share sufficiently similar characteristics with those groups to whom First Amendment protection to freely associate has been afforded. Consequently, it is recommended that Count III be dismissed.

### (G) ADA and Rehabilitation Act

Plaintiff also brings claims under Titles II of the ADA and Section 504 of the Rehabilitation Act of 1973. It is worth recognizing that the ADA and the Rehabilitation Act are generally interpreted consistently. Emerson v. Thiel College, 296 F.3d 184, 189 (3d Cir. 2002).

Title II of the ADA is intended to prohibit discrimination by governmental entities in their operation of public services, programs and activities. The relevant statutory provision provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. §12132. For purposes of this section, "public entity" includes " any department, agency, special purpose district, or other instrumentality of a State or States or local government[.]" 42 U.S.C.A. § 12131(1). "In order to establish a prima facie case of discrimination under the ADA, a plaintiff must prove (1) that he is disabled, (2) that he is a qualified individual with a disability, and (3) that he has suffered an adverse action because of that disability." Derrick F. v. Red Lion Area School Dist., 586 F.Supp.2d 282, 299 (M.D. Pa. 2008); Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 (3d Cir.2006) (citations omitted).

The Rehabilitation Act provides, in pertinent part: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a). Section 504 gives rise to an implied

private right of action in favor of persons who allege to have been subjected to illegal discrimination based on handicap.  Strathie v. Department of Transportation, 716 F.2d 227, 229 (3d Cir.1983).  Under §504, a plaintiff must show that: "1) he or she is a 'handicapped individual,' 2) he or she is 'otherwise qualified' for participation in the program, 3) the program receives 'federal financial assistance,' and 4) he or she was 'denied the benefits of' or 'subject to discrimination' under the program.  Nathanson v. Medical College of Pennsylvania, 926 F.2d 1368, 1380 (3d Cir. 1991) (quoting Strathie, supra at 230).

The question presented instantly is whether Plaintiff's treatment of his patients is included within the meaning of services, programs or activities under these Acts.  Plaintiff asserts that PennDOT, as a public entity, engages in direct discrimination by encroaching into the constitutionally-protected right to privacy, to wit., the confidential trust in the psychiatrist-patient relationship,  through the regulation's reporting requirement.  As a result, Plaintiff argues, his patients are less likely to be candid with him in their treatment.  Defendants contend, however, that both provisions of the statutes Plaintiff seeks to invoke "prohibit public entities from excluding disabled individuals from participation in or benefitting from governmental services, programs or activities."  (Doc. 21, p. 30-31).  To state a cause of action, they submit, such discrimination must be in a service, program

or activity of PennDOT itself, not the denial of access to Plaintiff's medical services. Inasmuch as Plaintiff challenges his patients right to access his services, there is no state service, program or activity at issue in the present action to trigger the application of either Title II or § 504.

There is a split of authority as to whether the second clause of § 12132 of Title II prohibits discrimination only in a public entity's services, programs or activities, as Defendants maintain, or whether this language is a catch-all phrase that prohibits all discrimination by a public entity and thus does not limit coverage to conduct that occurs within the services, programs or activities of a public entity, as Plaintiff argues. Courts within this district have interpreted this language to limit its application. "Although the second clause of § 12132 appears to be all-encompassing, it is limited by Title II's definition of 'qualified individual with a disability.'" Pennsylvania State Troopers Ass'n v. Pennsylvania, No. 1:06-CV-1079, 2007 WL 853958, *6 (M.D. Pa. March 20, 2007). Moreover:

> A plaintiff is not "qualified" to bring any Title II claim unless he or she "meets the essential eligibility requirements" of a government service, program, or activity provided by a public entity. The second clause of § 12132 therefore must relate to a government service, program, or activity; otherwise a plaintiff is not "qualified" to bring a claim under that clause.

McSherry v. Department of Labor & Industry, Civ. No. 1-04-CV-132, 2006 WL

463157, *10 (M.D. Pa. Feb. 23, 2006) (citing Zimmerman v. Or. Dep't of Justice, 170 F.3d 1169, 1175-76 (9th Cir. 1999)).  In the complaint, Plaintiff does not allege that the Defendants discriminate against him, or his patients, with respect to a service, program or activity the Commonwealth provides or that there are "public service[s] available to the non-disabled that [D]efendants are denying [his patients] because of their disability."  Cornell Companies, Inc. v. Borough of New Morgan, 512 F. Supp. 2d 238, 264-65 (E.D. Pa. 2007) (finding that Plaintiff failed to allege that the defendants discriminated against it and its students with respect to specific services, programs, or activities provided by the Borough defendants). Plaintiff instead alleges that an incidental effect of the regulation is the infringement on the right to privacy through the compromised communication between him and his patients.  The professional care he provides his patients is not a "governmental service, program or activity" so as to trigger the operation of Title II.  *See* Zimmerman*, supra.*  Consequently, having failed to establish a "service, program or activity" of PennDOT that discriminates in its benefits to his patients, Plaintiff has not established a prima facie case of discrimination under Title II.

    With respect to the Rehabilitation Act claim, although § 504 was initially adopted to give handicapped individuals equal access to employment

opportunities and educational programs, it has been applied in the medical context to ensure that individuals are not denied treatment or discriminated against by federally-supported entities because of a disability. <u>Woolfolk v. Duncan</u>, 872 F.Supp. 1381, 1388 (E.D. Pa.1995). For § 504 purposes, a "program or activity" that receives federal funds is defined as:

> all of the operations of ... an entire corporation, partnership, or other private organization, or an entire sole proprietorship ... which is principally engaged in the business of providing ... health care ... any part of which is extended Federal financial assistance.

29 U.S.C. § 794(b). "Receipt of federal funding in the form of Medicare or Medicaid payments for the care rendered to any patient brings the treating physician, hospital or medical center within the scope of the Act." <u>Sharrow v. Bailey</u>, 910 F.Supp. 187, 193 (M.D. Pa. 1995). As applied to the receipt of medical context, section 504 has been interpreted to prevent discrimination in the receipt of medical treatment.

However, Plaintiff does not allege he himself violates § 504 through discrimination against his patients but rather he accuses PennDOT of discrimination through its regulation. Having determined that PennDOT has the authority to set standards governing the safe operation of motor vehicles since it is rationally related to a legitimate state interest, the regulation does not run afoul of

§ 504 of the Rehabilitation Act.  Given the related purposes of § 504 and the ADA and the fact, as noted above, that they are regularly interpreted and applied consistently, the court concludes that Plaintiff cannot establish that his patients were denied benefits or subject to discrimination "under the program" inasmuch as he does not allege discrimination on his part through his practice against his patients.

With respect to the license recall procedure, Plaintiff contends that PennDOT discriminates against his patients based on their disability by summarily recalling, without investigation, their driver's licenses based on the unsubstantiated report(s) of a physician.  *See* 75 Pa. C.S.A. § 1519(c).  Defendants maintain that the recall procedure is not discriminatory in that it affords all individuals, the disabled and non-disabled alike, the same due process.  They observe, further, that a driver may challenge a recall by appealing the matter to state court, where PennDOT bears the burden of demonstrating an incompetency to drive, which can be rebutted.  75 Pa. C.S.A. § 1519(c).  Moreover, the due process challenge to this statute has been rejected by Pennsylvania courts, which have held that recalled drivers are not "qualified individuals" because they fail to meet the minimum standards to safely operate a car.  Additionally, Plaintiff has not identified how non-disabled but unfit drivers would fare better under the recall

provision than his disabled patients.  In fact, the recall statute does not differentiate with regard to disability but rather with respect to competency to safely operate a motor vehicle, though it may thereby affect some disabled drivers. Given PennDOT's statutory authority to determine a licensee's competency to operate a vehicle, and based on its legitimate state interest in maintaining safe roadways, such distinction amongst drivers cannot be said to be discriminatory.

Therefore, judgment should be entered for Defendants on Plaintiff's ADA and Rehabilitation Act claims.

## V. Recommendation

Based on the foregoing, it is respectfully recommended that

## V. Recommendation

Based on the foregoing, it is respectfully recommended that:

1.  The Motion for Judgment on the Pleadings (Doc. 18) be GRANTED to the extent the Complaint attempts to state a cause of action pursuant to 42 U.S.C. §§ 1983 and 1988;

2.  The Motion for Judgment on the Pleadings (Doc. 18) be DENIED as to Count I (Supremacy Clause), to the extent PennDOT's regulations seek disclosure of the medical record of any individual participating in a federally assisted alcohol or drug treatment program, and GRANTED in all other respects;

3.  The Motion for Judgment on the Pleadings (Doc. 18) be GRANTED as to Count II (vagueness claim under the Fifth and Fourteenth Amendments);

4. The Motion for Judgment on the Pleadings (Doc. 18) be GRANTED as to Count III (substantive due process claim arising under the Fifth and Fourteenth Amendments);

5. The Motion for Judgment on the Pleadings (Doc. 18) be GRANTED as to Count IV (freedom of association claim arising under the First and Fourteenth Amendments);

6. The Motion for Judgment on the Pleadings (Doc. 18) be GRANTED as to Count V (right to privacy claim under the Ninth and Fourteenth Amendments);

7. The Motion for Judgment on the Pleadings (Doc. 18) be GRANTED as to Count VI (claims of violations of the ADA);

8. The Motion for Judgment on the Pleadings (Doc. 18) be GRANTED as to Count VII (claims of violations of Section 504 of the Rehabilitation Act);

9. The Motion for Judgment on the Pleadings (Doc. 18) be GRANTED and Plaintiff's request for attorneys fees BE DENIED pursuant to 42 U.S.C. § 1988 in association with this action.[12]

---

[12]  It does not appear that attorneys' fees are recoverable under §1988 inasmuch as that statutory provision limits such an award to claims not presented herein.  The relevant statutory provision provides:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C.A. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. § 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held

Date: October 6, 2010                    s/ William T. Prince
                                         William T. Prince
                                         United States Magistrate Judge

_____

liable for any costs, including attorney's fees, unless such action was
clearly in excess of such officer's jurisdiction.

42 U.S.C. § 1988(b).