## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID BEHAR**, M.D., | : | **Civil Action No. 1:09-CV-2453** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA DEPARTMENT OF** | : | |
| **TRANSPORTATION and ALLEN** | : | |
| **BIEHLER** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court is the report (Doc. 37) of the Honorable William T.

Prince, United States Magistrate Judge, recommending that the motion for

judgment on the pleadings (Doc. 18) filed by defendants, the Pennsylvania

Department of Transportation ("PennDOT") and Allen Biehler, Secretary of

Transportation for the Commonwealth of Pennsylvania, be granted in part, and

denied in part.  Plaintiff David Behar, M.D. ("Dr. Behar") has filed objections (Docs.

43-44) to the magistrate judge's report and recommendation ("R&R").  The

Pennsylvania Medical Society, the American Medical Association, and the

Pennsylvania Psychiatric Society filed a brief of *amici curiae* (Doc. 42) in support of

Dr. Behar's objections.  For the reasons set forth below, the court will adopt the

R&R in its entirety.

## I.   Background

Dr. Behar, a licensed psychologist and health care provider in the

Commonwealth of Pennsylvania, filed the instant action challenging a PennDOT

regulation that requires health care professionals to report to the Department of

Transportation every patient over the age of fifteen who is affected by any of a

number of listed medical conditions which could impact their ability to safely

operate a motor vehicle.  See 75 PA. CONS. STAT. §§ 1517, 1518, 6103; 67 PA. CODE §

83.  The regulation provides, in relevant part:

> Disqualification on provider's recommendation.  A person who has any
> of the following conditions will not be qualified to drive if, in the
> opinion of the provider, the condition is likely to impair the ability to
> control and safely operate a motor vehicle:
> . . .
>
> (7) Use of any drug or substance, including alcohol, known to
> impair skill or functions, regardless whether the drug or
> substance is medically prescribed.
>
> (8) Other conditions which, in the opinion of a provider, is [sic]
> likely to impair the ability to control and safely operate a motor
> vehicle.

67 PA. CODE § 85.5(b).

> Physicians and other persons authorized to diagnose and treat
> disorders and disabilities defined by the Medical Advisory Board shall
> report to the Department, in writing, the full name, date of birth and
> address of every person 16 years of age and older diagnosed as having
> any specified disorder or disability within 10 days, under 75 Pa.C.S. §
> 1518 (relating to reports on mental or physical disabilities or
> disorders).

67 PA. CODE § 85.6.  A provider who fails to report such individuals is subject to a

summary offense and fine of $25.00.  75 PA. CONS. STAT. § 6502.   Dr. Behar contends

that this regulation violates numerous provisions of the federal constitution, the

Pennsylvania state constitution and federal law including: the Supremacy Clause,

the Due Process Clauses under the Fifth and Fourteenth Amendments, the First

and Fourteenth Amendment right to association, privacy rights under the Ninth

and Fourteenth Amendment, Article I, § 1 of the Pennsylvania Constitution, the

Americans with Disabilities Act, 42 U.S.C. § 12135, *et seq.*, and Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. § 794(a) *et seq.*  (Doc. 1).

Defendants filed a motion for judgment on the pleadings (Doc. 18) on

February 16, 2010.  By order dated August 3, 2010 (Doc. 35) this court referred the

motion to Magistrate Judge Prince to prepare a Report and Recommendation.  On

October 6, 2010, Magistrate Judge Prince filed his report recommending that this

court grant judgment in favor of defendants on all counts except for the Supremacy

Clause challenge in Count I of the complaint to the extent the PennDOT regulation

seeks disclosure of the medical record of any individual participating in a federally

assisted alcohol or drug treatment program pursuant to the Drug Abuse

Prevention, Treatment and Rehabilitation Act, 42 C.F.R. §§ 2.1 *et seq.*  (Doc. 37, at

13-16, 44).  Dr. Behar filed numerous objections to the R&R on November 8, 2010.

(Doc. 43).  The Pennsylvania Medical Society, the American Medical Association,

and the Pennsylvania Psychiatric Society filed a brief of *amici curiae* (Doc. 42) in

support of Dr. Behar's objections with respect to the privacy claim on November 8,

2010.[1]  Defendants filed their brief in opposition (Doc. 48) to the objections on November 26, 2010.  The matter is now ripe for disposition.

## II.   Standard of Review

### A.   Standard of Review for a Motion for Judgment on the Pleadings

A motion for judgment on the pleadings is the procedural hybrid of a motion to dismiss and a motion for summary judgment.  Rule 12(c) of the Federal Rules of Civil Procedure provides:  "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  FED. R. CIV. P. 12(c).  To succeed on a motion under Rule 12(c), the movant must clearly establish that no material issue of fact remains to be resolved and that "he is entitled to judgment as a matter of law."  Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005); see also 5C CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1368 (3d ed.). When deciding a motion for judgment on the pleadings, the court is directed to view "the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Sikirica, 416 F.3d at 220.

---

[1] Defendants assert that the amici brief is procedurally deficient because no federal or local rule allows for the filing of a brief by a non-party.  (Doc. 48, at 29). Although, there is no statute, rule or controlling case law regarding a district court's power to accept the filing of amicus briefs, courts in this circuit have determined that it is a matter within the district court's discretion.  See Sciotto v. Marple Newtown Sch. Dist., 70 F. Supp. 2d 553, 554 (E.D. Pa. 1999); Waste Mgt. of Pa., Inc. v. City of York, 162 F.R.D. 34, 36 (M.D. Pa. 1995).  The undersigned has determined that the amici brief may be of assistance to this court and has permitted its filing. (Doc. 50).

4

B.      **Standard of Review for a Magistrate Judge's Recommendation**

Where objections to a magistrate judge's report and recommendation are filed, the court must perform a *de novo* review of the contested portions of the report.  Supinski v. United Parcel Serv., Civ. A. No. 06-0793, 2009 WL 113796, at *3 (M.D. Pa. Jan. 16, 2009) (citing Sample v. Diecks, 885 F.2d 1099, 1106 n. 3 (3d Cir. 1989); 28 U.S.C. § 636(b)(1)(c)).  "In this regard, Local Rule of Court 72.3 requires 'written objections which . . . specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for those objections.'"  Id. (citing Shields v. Astrue, Civ. A. No. 07-417, 2008 WL 4186951, at *6 (M.D. Pa. Sept. 8, 2008)).

III.    **Discussion**

Dr. Behar claims, in essence, that Judge Prince erred in each and every one of his conclusions.  The court respectfully disagrees with each and every objection.

A.      **Dr. Behar's Standing**

Dr. Behar argues that Magistrate Judge Prince erred in concluding that he lacks individual standing to challenge the PennDOT regulation.  (Doc. 43, at 2-3; Doc. 44, at 12-14).  Judge Prince concluded that Dr. Behar satisfies third-party standing requirements to challenge the regulation on behalf of his patients.  (Doc. 37, at 7-8).  However, he found that Dr. Behar lacks individual standing to bring a pre-enforcement review of the regulation because Dr. Behar does not claim that he has been threatened with prosecution or that prosecution is even a remote possibility.  (Id. at 8 (citing Younger v. Harris, 401 U.S. 37, 42 (1971)).

To establish the constitutional minimum requirements of standing a party must show: (1) an injury in fact that is concrete and particularized and actual or imminent, not hypothetical or conjectural; (2) a causal connection between the injury and the challenged action; and (3) a likelihood that a favorable decision of the court will redress the injury.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  Judge Prince correctly concluded that Dr. Behar lacks individual standing, as he has shown no injury in fact.  Dr. Behar, practicing under the challenged regulation for thirty years, does not claim that he has been threatened with prosecution.  In fact, the regulation has never been enforced against health care providers who fail to disclose the information required under the regulation.

It is well-settled that part and parcel of pre-enforcement challenge to a criminal statute is a *credible* threat of prosecution.  See Babbitt v. United Farm Workers Nat. Union, 442 U.S. 289, 298 (1979).  '[P]ersons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs.'  Id. (quoting Younger, 401 U.S. at 42).  Dr. Behar directs the court's attention to a PennDOT physician reporting fact sheet that states "providers who do not comply with their legal requirement to report may be convicted of a summary criminal offense."  (See Doc. 26, at 25 n.1 (citing Pa. Dep't of Transp., *Physician Reporting Fact Sheet*, http://www.dmv.state.pa.us/pdotforms/fact_sheets/fs-pub7212.pdf)).  Standing alone, the fact sheet fails to create a credible threat of prosecution, particularly in the

6

absence of any history of prosecution.  Hence, the court adopts Judge Prince's

conclusion that Dr. Behar lacks individual standing.

### B.    The Appropriate Standard for a Facial Challenge

Dr. Behar's asserts that Judge Prince failed to apply the correct standard in

analyzing his facial Supremacy Clause challenge to PennDOT's regulation.  (Doc.

43, at 3-5; Doc. 44, at 14-16).  Judge Prince utilized the standard in United States v.

Salerno, 481 U.S. 739 (1987).  (Doc. 37, at 12).  Pursuant to Salerno, a statute is

facially unconstitutional only if "no set of circumstances exists under which the

[statute] would be valid."  Salerno, 481 U.S. at 745.  Dr. Behar claims that the

Supreme Court has since adopted a different standard, finding that a facial

challenge fails when a statute has "a plainly legitimate sweep."  Crawford v. Marion

Cnty. Election Bd., 553 U.S. 181, 202-03 (2008) (plurality) (quoting Wash. State

Grange v. Wash. State Republican Party, 552 U.S. 442 (2008)) (internal citations and

quotations omitted).  He asserts that recent Third Circuit precedent has ignored the

new standard or has misconstrued Washington State Grange.  (Doc. 44, at 15-16).

This argument is unavailing.  The Salerno standard is the appropriate

standard for facial challenges and, applying it to the instant matter, the regulation

survives facial challenge.  Reliance on the "plainly legitimate sweep" standard set

forth in Crawford is problematic in that it is a plurality opinion joined by only three

members of the Court.  Moreover, Washington State Grange provides scant support

for Dr. Behar's position.  Washington State Grange merely mentions that some

members of the Court criticize the Salerno standard and recognize a second type of

facial challenge *in the First Amendment context*.  Id.  Third Circuit precedent has

limited the use of the "plainly legitimate sweep" standard to First Amendment

cases.  See United States v. Marcavage, 609 F.3d 264, 273 (3d Cir. 2010) (noting that

there are two ways to succeed in a facial challenge in the *First Amendment* context:

the plaintiff "may demonstrate either that no set of circumstances exists under

which the [law] would be valid, i.e., the law is unconstitutional in all its applications,

or that the law is overbroad because a substantial number of its applications are

unconstitutional, judged in relation to the [law's] plainly legitimate sweep"

(citations and quotations omitted)); Brown v. City of Pittsburgh 586 F.3d 263, 269

(3d Cir. 2009) (noting in the context of a First Amendment challenge to a "buffer"

and "bubble" zone around hospitals and clinics that the Supreme Court has

suggested a slightly lower burden than the "no set of circumstances" standard set

forth in Salerno).  As this is not a First Amendment challenge, the "plainly

legitimate sweep" standard is simply inapplicable.[2]  Judge Prince correctly applied

---

[2]  Assuming *arguendo* that the "plainly legitimate sweep" standard is
applicable, the court nevertheless finds that the PennDOT regulation withstands
constitutional scrutiny.  Behar challenges the regulation on grounds that it is
preempted by the Drug Abuse Prevention, Treatment and Rehabilitation Act, 42
C.F.R. § 2.1 *et seq.*, subsequently incorporated under the Public Health Services Act
("PHSA"), 42 U.S.C. § 290dd-2.  The PHSA restricts disclosure of medical
information for those individuals participating in federally-assisted substance abuse
treatment.  The regulatory requirement to report drug use is but one of  numerous
reporting requirements, the vast majority of which have nothing to do with
substance abuse.  See 67 Pa. Code §§ 83.3, 83.4, 83.5.  It cannot be said that a
substantial number of the regulation applications are unconstitutional in relation to
the regulation's plainly legitimate sweep.  Thus, the regulation survives facial
challenge.  See McCullen v. Coakley, 571 F.3d 167, 174 (1st Cir. 2009) ("Howsoever
worded, this standard imposes a very heavy burden on a party who mounts a facial

the Salerno standard to Dr. Behar's facial Supremacy Clause challenge and

properly concluded that Dr. Behar has not satisfied his burden.

### C. Vagueness of Regulations

Dr. Behar next contends that Judge Prince erred in concluding that the

PennDOT regulation is not unconstitutionally vague. Dr. Behar reasserts the

arguments he set forth in his brief in opposition to the motion for judgment on the

pleadings. He contends that reporting individuals with "[o]ther conditions which,

in the opinion of a provider, [are] likely to impair the ability to control and safely

operate a motor vehicle," 67 PA. CODE § 85.5(b), requires him to assess driving skills.

Behar notes that the Motor Vehicle Code does not define what abilities are

necessary "to control and safely operate a motor vehicle," and that it fails to specify

what "other conditions" must be reported. He further asserts that the Medical

Advisory Board impermissibly delegated to health care providers its authority to

define conditions that affect the ability to drive safely.

A statute is considered unconstitutionally vague if "men of common

intelligence must necessarily guess at its meaning." Broadrick v. Oklahoma, 413

U.S. 601, 607 (1973) (quoting Connally v. Gen. Constr. Co. , 269 U.S. 385, 391 (1973).

Judge Prince found the standard to be clear: the provider's professional opinion

governs with respect to "other conditions" and a provider need not become an

assessor of driving skills to make that determination. (Doc. 37, at 18). Judge Prince

_____

challenge to a state statute.").

concluded that the catch-all "other conditions" phrase is "general enough to

encompass impairments which may not be listed but which nonetheless would have

an effect on the ability to drive safely while also being sufficiently specific as to what

is required of health care providers." (Id. at 19).

The court agrees with Judge Prince's sound analysis.  It is beyond cavil that

no one is better qualified than a healthcare professional to make an assessment of

reportable impairments.  And such an assessment does not require an expertise in

driving skills.  The healthcare provider need only form a professional opinion that

the impairment is "likely" to jeopardize the safe operation of a motor vehicle.  That

this regulatory language requires a professional opinion and, therefore,

incorporates an element of subjectivity, does not mean it is impermissibly vague.  It

simply means that the statutory standard is tied to the exercise of professional

judgment, a perfectly acceptable, direct, and clear requirement.  See Doe v. Bolton,

410 U.S. 179, 192 (1973) (rejecting vagueness challenge to Georgia abortion statute

that required physician's decision to rest upon "his best clinical judgment that an

abortion is necessary," wherein appellants argued that the statute lacked objective

standards and that the language failed to apprise doctors of what conduct was

proscribed, and concluding that language permitted physicians to consider all

relevant factors in order to make the best medical judgment); United States v.

Collier, 478 F.2d 268, 271-72 (5th Cir. 1973) (holding that language in the Controlled

Substance Act making it illegal for a physician to dispense a schedule II controlled

substance to the ultimate user except "in the course of his professional practice"

was not unconstitutionally vague and stating that "statutes affecting medical practice need not delineate the precise circumstances constituting the bounds of permissible practice"); <u>United States v. Quinones</u>, 536 F. Supp. 2d 267, 273-74 (E.D.N.Y. 2008) (concluding that the "usual scope of professional practice" in the Controlled Substance Act is not unconstitutionally vague and stating that 'a statute or regulation is not required to specify every prohibited act' (internal citations omitted)).

### D.    **Article I, Section 1 of the Pennsylvania Constitution**

Dr. Behar's fourth objection asserts that Judge Prince failed to address his right to privacy cause of action pursuant to Article I, § 1 of the Pennsylvania Constitution.  He claims that defendants did not challenge the claim and Judge Prince did not address the claim.  (Doc. 44, at 22).  Defendants counter that their motion for judgment on the pleadings sought judgment on all counts and their brief in support recognizes and discusses the claim.  (Doc. 48, at 28).

Article I, § 1 of the Pennsylvania Constitution states: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." PA. CONST. art. 1, § 1.  The Pennsylvania Supreme Court has interpreted the section as including a right to privacy that protects against the disclosure of personal matters in which an individual has a legitimate expectation of privacy.  <u>See</u> <u>Denoncourt v. Commonwealth State Ethics Comm.</u>, 470 A.2d 945, 947-

48 (Pa. 1983).  However, the right is not unqualified; it must be balanced against state interests.  In re T.R., 731 A.2d 1276, 1280 (Pa. 1999).

Courts in this circuit have generally considered federal constitutional privacy claims *in pari materia* with state constitutional privacy claims.  See Dziewa v. Pa. Interscholastic Athletic Ass'n, Inc., Civ. A. No. 08-5792, 2009 WL 113419, at *4 (E.D. Pa. Jan. 16, 2009); Denoncourt, 470 A.2d at 948 (adopting same two-pronged analysis for privacy claims arising under the Pennsylvania state constitution as applied to privacy claims arising under the federal constitution).  Although Judge Prince did not discuss Article I, § 1 separately from the Fourteenth Amendment privacy claim, his analysis of Dr. Behar's privacy claim relied on McKay v. Commonwealth, 415 A.2d 910 (Pa. Commw. Ct. 1980).  In McKay, the Pennsylvania Commonwealth Court concluded that a patient's constitutional right to privacy was not violated by her psychiatrist's disclosure of her drug dependence to PennDOT in accordance with the reporting requirement.[3]  Id. at 915.  The McKay court held that "allowing disclosure of information obtained by a psychiatrist from a motor vehicle operator at a hearing conducted for the sole purpose of determining that operator's competency to operate a motor vehicle constitutes an intrusion on the operator's right to privacy, but that intrusion . . . is outweighed by the public's interest in

---

[3]  The McKay court did not specify whether its analysis concerned a constitutional right to privacy under the Pennsylvania Constitution or the United States Constitution.  However, the McKay court referenced In re B, 394 A.2d 419 (Pa. 1978), in its analysis.  In In re B, the state supreme court invoked both federal and state constitutional provisions in its discussion of the constitutional right to privacy.  Id. at 425.

12

having incompetent drivers removed from the highways."  <u>Id.</u>  Thus, Judge Prince did not fail to address Dr. Behar's privacy claim under Article I, § 1 of the Pennsylvania Constitution.  Rather, his analysis is subsumed in the review of Dr. Behar's privacy claim under the United States Constitution.  As discussed further at <u>infra</u> Part III.G, the court finds no error in Judge Prince's analysis.

####    E.    <u>Due Process Claims</u>

In his fifth objection, Dr. Behar contends that Judge Prince erroneously concluded that he failed to state a cause of action for violation of his substantive due process rights.  Judge Prince concluded that the right to practice one's profession is not a fundamental right, thus, the PennDOT regulation need only be rationally related to a legitimate government interest.  (Doc. 37, at 30-31).  The purpose of the PennDOT regulation—to promote the safe operation of vehicles by competent drivers on Pennsylvania's roadways—is rationally related to a legitimate state interest and, therefore, dismissal of the due process claim is warranted.

Dr. Behar asserts that pursuant to <u>Sharon v. Larson</u>, 650 F. Supp. 1396 (E.D. Pa. 1986), PennDOT must establish a reasonable factual basis that is "rationally related to the State's interest in promoting highway safety."  (<u>See</u> Doc. 44, at 23 (citing <u>Sharon</u>, 650 F. Supp. at 1404)).  He asserts that there is no statistical benefit to mandatory reporting laws for numerous conditions that must be reported under the PennDOT regulation.  He claims that mandatory reporting in these circumstances does not augment highway safety.  To the contrary, he asserts that the reporting requirements interfere with a doctor's ability to treat his patients by

creating a disincentive to patient candor.  According to Dr. Behar, this chilling

effect on, for example, a patient's description of symptoms, defeats the very purpose

of the reporting requirements, and the regulation is not rationally related to the

Commonwealth's interest.  (Doc. 44, at 23-24).  Dr. Behar also asserts that the

psychiatrist-patient privilege is as strong as the attorney-client privilege in

Pennsylvania (see Doc. 44, at 24-26), and PennDOT regulations require him to

"breach this absolute duty of confidentiality." (Id. at 26).  Dr. Behar thus infers that

as a consequence of the strength of the psychiatrist-patient privilege he is exempted

from the reporting requirement.

The rational review standard is very deferential to the state: "a statute

withstands substantive due process challenge if the state identifies a legitimate

state interest that the legislature could rationally conclude was served by the

statute." Alexander v. Whitman, 114 F.3d 1392, 1403 (3d Cir. 1997) (quoting

Sammon v. New Jersey Bd. of Med. Examiners, 66 F.3d 639, 645 (3d Cir. 1995)); see

also City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985) (rational basis

review starts from the presumption that the statute is valid).  The Commonwealth's

interest in promoting the safe operation of vehicles on its roadways is undoubtedly

a legitimate one, see Sharon, 650 F. Supp. at 1397; Wroblewski v. Commonwealth,

809 A.2d 247, 250 (Pa. 2002) (highway safety a compelling state interest), and the

Pennsylvania General Assembly *could reasonably conclude* that the physician

reporting requirement is rationally related to that interest.  In Estate of Witthoeft v.

Kiskaddon, the Pennsylvania Supreme Court stated that the physician reporting

14

requirement benefitted "the Commonwealth by relieving it of an administrative

burden." 733 A.2d 623, 627 (Pa. 1999).   Rather than require drivers to submit to

periodic physical examinations by PennDOT—which would be an intrusive

requirement—the Commonwealth requires physicians to report certain disabilities

and disorders in order to determine the propriety of licenses for patients with

certain medical conditions.  Id.  The Commonwealth's reporting requirement is,

therefore, rationally related to the state's legitimate interest in roadway safety.

Dr. Behar's assertions with respect to the statutory psychiatrist-patient

privilege are, likewise, unavailing.  The psychiatrist-patient privilege[4] is a

testimonial privilege that does not protect opinions, observations or diagnoses; it

protects only communications between psychiatrist and patient.  See

Commonwealth v. Moody, 843 A.2d 402, 406 (Pa. Super. Ct. 2004) (citing

Commonwealth v. G.P., 765 A.2d 363 (Pa. Super. Ct. 2000)); Commonwealth v.

Simmons, 719 A.2d 336, 341 (Pa. Super. Ct. 1998) (stating that "it is clear that the

privilege is designed to protect confidential communications made and information

---

[4] In the Commonwealth of Pennsylvania, the psychiatrist-patient privilege statute provides as follows:

> No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52), to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client.  The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa. Cons. Stat. § 5944.

given by the client to the psychotherapist in the course of treatment. . . . [h]owever, the privilege is not designed to specifically protect the psychotherapist's own opinion, observations, diagnosis or treatment alternatives"); <u>see also</u> <u>Rost v. State Bd. of Psychology</u>, 659 A.3d 626, 629 (Pa. Commw. Ct. 1995) (concluding that plaintiff erred in attempting "to equate the psychologist-client privilege with the rule of confidentiality found in the Code of Ethics for psychologists.  Although the two are similar, the privilege is limited in scope to the question of admissibility of evidence in a civil or criminal trial.").

The psychiatrist-patient statutory privilege does not, as Dr. Behar contends, create an "absolute duty of confidentiality" violated by the reporting requirement. The reporting requirement, in fact, honors the psychiatrist-patient privilege by proscribing the introduction of these reports in any criminal or civil trial, *except* in proceedings to determine the competency of an individual to operate a motor vehicle.  <u>See</u> 75 PA. CONS. STAT. § 1518(e); <u>see also</u> 75 PA. CONS. STAT. § 1519; 75 PA. CONS. STAT. § 1550.

The record and the applicable legislative history are devoid of any indication that the Pennsylvania General Assembly intended to create an exemption from the reporting requirement for information obtained through the psychiatrist-patient relationship.  <u>See</u> <u>McKay</u>, 415 A.2d at 913-14 (rejecting appellant—a psychiatric patient's—assertion that doctor testimony should be excluded on basis of statutory physician-patient privilege because enactment became effective subsequent to passage of Vehicle Code).  The psychiatrist-patient statutory privilege, as it

16

currently exists, was passed by the Pennsylvania legislature on July 9, 1976.  See

Act of July 9, 1976, Pub. L. 586, No. 142, § 5944.  However, the statute is

substantially and materially derived from the Act of March 23, 1972.  See 1972 PA.

LAWS 142-43, § 13, *repealed by* Act of April 28, 1978, Pub. L. 202, No. 53.  Like the

current statutory privilege, the original 1972 privilege protected a psychologist or

psychiatrist from examination in any criminal or civil action as to information

acquired in the course of his professional services without the written consent of

the client.  Id.[5]

       The PennDOT statutory provision at issue was enacted by the Act of June 17,

1976.  See Pub. L. 162, No. 81, § 1518 (codified as amended at 75 PA. CONS. STAT. §

1518).[6]  It is well-settled that "[a] 'cardinal principle of statutory interpretation' is

that no provision 'shall be superfluous, void, or insignificant.'"  In re Phila.

Newspapers, Inc., 599 F.3d 298, 330 (3d Cir. 2010) (quoting TRW Inc. v. Andrews,

---

[5]  The 1972 statutory provision provided:
A person licensed as a psychologist under the provisions of this act
cannot, without the written consent of his client, be examined in a civil
or criminal action as to any information acquired in the course of his
professional services in behalf of the client.  The confidential relations
and communication between a psychologist and his client are on the
same basis as those provided by law between an attorney and client
and nothing in this act shall be construed to require any such
privileged communication to be disclosed.
1972 PA. LAWS 142-43, § 13; Compare id. and supra note 4.

[6]  The 2004 amendment of § 1518 added the following professionals to the list
of individuals required to report to PennDOT: podiatrists, chiropractors, physicians
assistants, and certified registered nurse practitioners.  See 2004 Pa. Legis. Serv.
Act 2004-76, Pub. L. 698, No. 76.

534 U.S. 19, 31 (2001)).  The reporting requirement, enacted *subsequent to* the statutory psychiatrist-patient privilege *with* an exception to reporting and the use of those reports solely in driving competency proceedings, clearly does not exempt psychiatrists from the reporting directive.  To conclude otherwise would render the Vehicle Code exception, which provides that no report "shall be sued as evidence in any civil or criminal trial, *except* in any proceeding" to determine driver competency, void at its inception.  See 75 PA. CONS. STAT. § 1518 (emphasis added).

Nor can the court conclude that the current statutory psychiatrist-patient privilege—enacted less than one month after the physician reporting requirement and substantially the same as the prior 1972 version of the privilege—was passed by the Pennsylvania General Assembly to nullify the limited exception to the privilege established by the Vehicle Code reporting requirement.  In fact, state courts have rejected this very argument with respect to the physician-patient privilege.  In McKay, the court dismissed the plaintiff's argument that passage of the physician-patient privilege, which occurred after enactment of the vehicle code reporting requirement, exempted physicians from the reporting requirement.  See McKay, 415 A.2d at 913-14.  Notably, the Pennsylvania General Assembly enacted the physician-patient privilege and the psychiatrist-patient privilege through the same legislation.  See Act of July 9, 1976, Pub. L. 586, No. 142, §§ 5929, 5944.  Neither physicians nor psychiatrists are exempted from the vehicle code reporting requirement.

18

The information reported to PennDOT remains confidential and is used only for determining driver competency.  See 75 PA. CONS. STAT. §§ 1518(d)-(e), 1519, 1550.  Moreover, Dr. Behar must report to PennDOT *only* when in *his professional opinion* the patient's condition impairs the patient's ability to safely operate a motor vehicle.  For all these reasons, Dr. Behar's substantive due process claim must fail.

### F.    Freedom of Association

In Dr. Behar's sixth objection, he attempts to bootstrap a First Amendment freedom of association claim from the psychiatrist-patient relationship.  (Doc. 44, at 27-30).  Dr. Behar asserts that treating patients with certain disabilities "supports the advancement of a belief in an idea, namely, the belief that people with disabilities have the right to medical treatment and have the right to participate as full members in our society."  (Doc. 43, at 9).  While imaginative, this assertion is ineffective to sustain a freedom of association claim.  Judge Prince rightly concluded that Dr. Behar's professional relationship with his patients, undertaken for a profit, "fails to share sufficiently similar characteristics with those groups to whom First Amendment protection to freely associate has been afforded."  (Doc. 37, at 37).

The First Amendment nowhere explicitly protects the freedom to associate, but the Supreme Court has recognized this freedom as a fundamental right protected by the Constitution.  NAACP v. Alabama, 357 U.S. 449, 460-61 (1958).  By definition, it is the freedom to associate for the purposes of engaging in activities protected by the First Amendment, such as speech, assembly, petitioning the

19

government, and the exercise of religion.  <u>Roberts v. U.S. Jaycees</u>, 468 U.S. 609, 618

(1984).

Dr. Behar's association with a patient is an association in the broadest sense,

i.e. an association of two, however, it is not the type of association protected by the

First Amendment.  Dr. Behar is dispensing fee-based mental health treatment to

his patients; the association is not one formed for the purposes of advocacy or other

First Amendment activity.  <u>See</u> <u>Conant v. McCoffey</u>, No. C 97-0139, 1998 WL 164946,

at *3 (N.D. Cal. 1998) (First Amendment freedom of association inapplicable to

doctor/patient relationship).  The mere fact that Dr. Behar may treat members of a

protected class under the Civil Rights statutes or consider such treatment to

advance societal acceptance of individuals with disabilities or illnesses does not

transform his professional efforts into the group advocacy recognized in <u>NAACP v.</u>

<u>Alabama</u>, <u>supra</u>; <u>Conant</u>, 1998 WL 164946, at *4.  However laudable his musings

may be, treatment, not institutional effect, is the *sine qua non* of Dr. Behar's

"association."  For these reasons, the court denies Dr. Behar's sixth objection.

### G.   <u>Invasion of Privacy</u>

Dr. Behar asserts in his seventh objection that the PennDOT  reporting

requirement "constitutes a massive invasion of privacy interests due to its profound

consequences on the patient."  (Doc. 44, at 31).  According to Dr. Behar, as a result

of the mandatory reporting, patients decline to seek needed medical treatment in

order to maintain their driving privileges.  (Id. at 32).[7]  The Pennsylvania Medical

Society, the American Medical Association and the Pennsylvania Psychiatric

Society (hereinafter collectively "Amici") filed an *amici curiae* brief in support of

Dr. Behar on this claim.  (Doc. 42).  Amici raise many of the same arguments as Dr.

Behar.  They assert that patients have a substantial and constitutionally protected

privacy interest in the confidentiality of their health records.  (Id. at 12).  Amici

contend that PennDOT regulations are "impermissibly overbroad" and require

reporting in many circumstances where there is no public interest in such

reporting.  (Id. at 15).  For example, Amici assert that there are "transient or

relatively short-lived" medical conditions that may affect an individual's driving

ability, such as fractures or surgery, corrected vision and medication with sedating

effects.  (Id. at 18-19).  These temporary impairments, they argue, will have ceased

to effect driving skills well before PennDOT acts upon a physician's notice of such

conditions.  (Id. at 19).

Amici also assert that mandated reporting is not in harmony with medical

ethics.  (Id. at 22).  The American Medical Association advocates a staged approach

in which reporting is required only after less intrusive options fail.  (Id.)  Amici

---

[7]  The court notes with interest that, in the context of his privacy claim, Dr.
Behar contends that the Commonwealth lacks a compelling state interest for its
reporting requirement.  (Doc. 44, at 30).  Yet, in the context of other claims, he
concedes propriety of the state interest, but challenges the means undertaken to
address that interest.  For example, in his void for vagueness challenge, Dr. Behar
states that PennDOT's regulation is "not narrowly tailored to achieving the
Commonwealth's admittedly compelling purpose."  (Id. at 21).

contend that many patients will "readily and credibly agree to stop driving," or will voluntarily subject their driving privileges to certain restrictions.  (Id. at 21). Finally, Amici assert that a more comprehensive record is necessary to conduct a proper balancing of the patient's privacy interests versus the state's interest in ensuring the safe operation of vehicles by licensed drivers.  (Id. at 24).

Judge Prince recommended granting judgment in favor of defendants on the privacy claim.  He concluded that the state has a compelling interest in protecting motorists on the roadways and that the reporting requirement is narrowly tailored to achieve that end.  (Doc. 37, at 28).  He rejected Dr. Behar's suggestion that a permissive reporting scheme would be more narrowly tailored and found that the statutory psychiatrist-patient privilege does not outweigh the Commonwealth's legitimate interest in disclosure of patients with certain medical conditions.  (Id. at 27, 28).

Patients have a constitutionally protected privacy interest in their medical information.  Whalen v. Roe, 429 U.S. 589, 602 (1977) (constitutionally protected interest in avoiding disclosure of personal matters); United States v. Westinghouse Elec. Corp., 638 F.2d 570, 577 (3d Cir. 1980) ("There can be no question that an employee's medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection.").  Nonetheless, the right is not absolute.  See Doe v. Se. Pa. Transp. Auth., 72 F.3d 1133, 1139 (3d Cir. 1995); Westinghouse Elec. Corp., 638 F.2d at 578.  The Third Circuit has recognized that the 'public health or other public concerns may support access to

facts an individual might otherwise choose to withhold.' (Doc. 37, at 24 (quoting

Westinghouse Elec. Corp., 638 F.2d at 578)).  In particular, reporting requirements

have been upheld when access to the information is used by the state to abate

threats to public health and safety.  Westinghouse Elec. Corp., 638 F.2d at 578.  A

court must, therefore, balance an individual's privacy interests against the state

interest.

The Third Circuit has established seven factors the court should consider in

that balancing:

> the type of record requested, the information it does or might contain,
> the potential for harm in any subsequent nonconsensual disclosure,
> the injury from disclosure to the relationship in which the record was
> generated, the adequacy of safeguards to prevent unauthorized
> disclosure, the degree of need for access, and whether there is an
> express statutory mandate, articulated public policy, or other
> recognizable public interest militating toward access.

Id. at 578.

In the case *sub judice*, the majority of the Westinghouse factors weigh in

favor of disclosure.  With respect to the type of record request, the court notes that

PennDOT requires only a fraction of the information contained in a patient's

medical file—that which bears directly on a patient's ability to safely operate a

motor vehicle.  On the adequacy of safeguards, Pennsylvania statutorily mandates

confidentiality: "The reports required by this section shall be confidential and shall

be used solely for the purpose of determining the qualifications of any person to

drive a motor vehicle on the highways of this Commonwealth."  75 PA. CONS. STAT.

§ 1518(d).[8]  The need for access to this information—to ensure driver competency and road safety—is self-evident.  Obviously, with respect to the final <u>Westinghouse</u> factor, the regulation stems from an express statutory mandate and is adequately supported by strong public policy.  <u>See</u> 75 PA. CONS. STAT. §§ 1517, 1518, 1519. Admittedly, there is potential harm to the patient in the non-consensual disclosure of the patient's medical conditions to PennDOT.  However, the likelihood of this harm is remote in light of the confidentiality provision of the reporting statute.  <u>See</u> <u>id.</u> §§ 1518, 1519.  It is also conceivable that the reporting requirement may adversely impact the psychiatrist-patient relationship by chilling patient candor. That potential harm is mitigated by the limited scope of information reported to PennDOT as well as the confidentiality provision.  PennDOT does not collect detailed patient histories, but rather requires only the confidential reporting of disorders or disabilities that impair driving abilities.  On balance, PennDOT's significant need for disclosure outweighs the potential harm to the patient.

The court also agrees with Judge Prince that Dr. Behar's permissive reporting scheme is not more narrowly tailored than the mandatory reporting requirement.  A permissive reporting scheme would place the burden on physicians to evaluate driving abilities and such subjectivity "would undoubtedly result in

---

[8]  The Vehicle Code also provides that the reports shall not be used as evidence in any criminal or civil trial except in proceedings to determine the competency of an individual to operate a motor vehicle.  <u>See</u> 75 PA. CONS. STAT. § 1518(e); <u>see</u> <u>also</u> 75 PA. CONS. STAT. § 1519; 75 PA. CONS. STAT. § 1550.

different assessments of similar impairments and produce less uniform outcomes throughout the Commonwealth." (Doc. 37, at 27).

Highway safety is a compelling state interest. <u>See</u> <u>Wroblewski v. Commonwealth</u>, 809 A.2d 247, 250 (Pa. 2002). The mandatory physician reporting requirement is narrowly tailored to achieve that interest. <u>See</u> <u>Witthoeft v. Kishkaddan</u>, 733 A.2d 623, 627 (Pa. 1999). In this instance, the privacy interests of Dr. Behar's patients are outweighed by the state's compelling interest. The concerns of the medical community are not acute, and the safe operation of vehicles on Pennsylvania roadways compels a broader consideration of issues than those asserted by Dr. Behar and Amici.

### H. Title II of the ADA

Finally, Dr. Behar contends in his eighth objection that Judge Prince erroneously interpreted Title II of the Americans with Disabilities Act ("ADA") and overlooked the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA") in recommending judgment in favor of defendants. (Dc. 44, at 33-37). The relevant statutory provision of the ADA provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.[9]  Dr. Behar asserts that the last clause, "or be subjected to
discrimination by any such entity," is a catch-all phrase not limited (like the first
clause) to conduct that occurs within the services, programs or activities of a public
entity.  (Doc. 44, at 33).  Dr. Behar further contends that Judge Prince erred in
relying upon employment discrimination cases in his analysis of the clause because
they are irrelevant to the issue at bar, to wit: whether Title II applies to PennDOT's
promulgation of a mandatory reporting regulation.  (Id. at 33, 35-36).

    Courts in this district have limited the application of § 12132 to
discrimination in a public entity's services, programs or activities.  (Doc. 37, at 40).
Consequently, Judge Prince concluded that Dr. Behar's treatment of his patients
does not fall within the ambit of "services, programs or activities" as defined in this
jurisdiction.  (Id. at 39-41).  The court agrees with Judge Prince's assessment.

    In Pennsylvania State Troopers Ass'n v. Pennsylvania, this court discussed
Title II of the ADA (§ 12132).  No. 1:06-CV-1079, 2007 WL 853958, at * 5-8 (M.D. Pa.
Mar. 20, 2007).  Although in the context of an employment discrimination case, the
court's analysis is equally applicable to the instant case.  Significantly, the court
determined that the second clause did not encompass a cause of action for any and
all discrimination by a public entity.  Id. at *6.  We explained that construing the
second clause as an umbrella phrase prohibiting all discrimination of any kind by a

---

    [9]  Dr. Behar asserts that the "ADAAA has significantly increased the rights of
disabled persons with respect to discriminatory conduct by the government," (Doc.
44, at 36), but fails to indicate how the increased rights affect the provision at issue.
The ADAAA did not amend § 12132.  See Pub. L. No. 110-325, 122 Stat. 3553.

public entity, *including* employment discrimination, is inconsistent with the plain

language of Title II of the ADA as a whole.  Id.  Congress specifically defined a

"qualified individual with a disability" under Title II as:

> an individual with a disability who, with or without reasonable
> modifications to rules, policies, or practices, the removal of
> architectural, communication, or transportation barriers, or the
> provision of auxiliary aids and services, meets the essential eligibility
> requirements for the receipt of services or the participation in
> programs or activities provided by a public entity.

42 U.S.C. § 12131(2).  This definition, the court noted, echoes the "services,

programs, or activities" language of the first clause of § 12132.  Pa. State Troopers

Ass'n, 2007 WL 853958, at *6.  Therefore, the court concluded that "[a]lthough the

second clause of § 12132 appears to be all-encompassing, it is limited by Title II's

definition of 'qualified individual with a disability.'"  Id.; see also Zimmerman v.

Oregon Dep't of Justice, 170 F.3d 1169, 1175-76 (9th Cir. 1999).  Dr. Behar's

treatment of his patients is not a service, program, or activity of PennDOT;

therefore, he cannot sustain a claim under Title II of the ADA.

Dr. Behar also asserts a cause of action under the ADA on behalf of his

patients.  He argues that his patients' procedural due process rights are infringed

on the basis of their disabilities.  Specifically, he contends that PennDOT

summarily recalls patients' licenses without appropriate investigation, forcing

patients to appeal.  (Doc. 44, at 36-37).  Judge Prince rejected this argument.  He

concluded that the PennDOT's recall procedure does not differentiate with regard

to disability but rather with respect to competency to operate a motor vehicle, a

nondiscriminatory distinction.  (See Doc. 37, at 43-33).  The court finds no error in this conclusion.

The cases cited by Dr. Behar do not support his argument.  In Byler v. Commonwealth Department of Transportation, 883 A.2d 724 (Pa. Commw. Ct. 2005), the court rejected PennDOT's argument that *only* medical evidence is sufficient to rebut its *prima facie* case of incompetency to operate a motor vehicle. The court looked to the applicable statutory and regulatory provisions and found no indication that a patient was required to present medical evidence to rebut PennDOT's *prima facie* case of incompetency.  Id. at 728-29.

In Peachey v. Commonwealth Department of Transportation, Bureau of Driver Licensing, 979 A.2d 951 (Pa. Commw. Ct. 2009), the court rejected PennDOT's contention that the trial court erred in reinstating the driving privileges of a licensee whose license was suspended after he suffered a seizure.  PennDOT regulations require suspension of a license until the licensee is seizure-free for six months.  See 67 PA. CODE § 83.4.  Nevertheless, the trial court accepted medical testimony from the licensee's doctor that the licensee was competent to drive only two months after suffering the seizure.  Id. at 955-56 (discussing Com. Dept. of Transp., Bureau of Driver Licensing v. Clayton, 684 A.2d 1060 (Pa. 1996)).  The trial court concluded that due process requires the court to consider, if proferred, an independent assessment of competency; therfore, PennDOT regulations do not create an irrebuttable presumption of incompetency to drive.  Id.   Given this

explicit recognition of a licensee's due process rights in competency proceedings,

<u>Peachey</u>, <u>supra</u> does not undergird Dr. Behar's argument.

**IV.    Conclusion**

For the foregoing reasons the court will adopt the report and

recommendation (Doc. 37) of the magistrate judge in its entirety.

An appropriate order is attached.


                                      S/ Christopher C. Conner
                                      CHRISTOPHER C. CONNER
                                      United States District Judge


Dated:        March 31, 2011

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID BEHAR**, M.D., | : | **Civil Action No. 1:09-CV-2453** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA DEPARTMENT OF** | : | |
| **TRANSPORTATION and ALLEN** | : | |
| **BIEHLER** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 31st day of March, 2011, upon consideration of the report
(Doc. 37) of the magistrate judge recommending that defendants' motion (Doc. 18)
for judgment on the pleadings be granted with respect to all counts of the complaint
except for the Supremacy Clause challenge in Count I of the complaint to the extent
the PennDOT regulation requires disclosure of the medical record of any individual
participating in a federally assisted alcohol or drug treatment program pursuant to
the Drug Abuse Prevention, Treatment and Rehabilitation Act, 42 C.F.R. §§ 2.1 *et
seq*, and upon further consideration of the objections (Doc. 43) to the report and
recommendation filed by plaintiff and the brief of *amici curiae* (Doc. 42) filed by the
Pennsylvania Medical Society, the American Medical Association, and the
Pennsylvania Psychiatric Society on behalf of plaintiff, and for the reasons stated in
the accompanying memorandum, it is hereby ORDERED that:

1.      The report of the magistrate judge (Doc. 37) is ADOPTED in its
        entirety.

2.      Defendants' motion (Doc. 18) for judgment on the pleadings is
        GRANTED in part, and DENIED in part as follows:

        a.      The motion is DENIED with respect to the Count I
                Supremacy Clause challenge to the extent PennDOT's
                regulation requires disclosure of the medical record of
                any individual participant in a federally assisted alcohol
                or drug treatment program.

        b.      The motion is GRANTED in all other respects.


                            S/ Christopher C. Conner
                            CHRISTOPHER C. CONNER
                            United States District Judge