# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID BEHAR, M.D.,** | : Civil Action No. 1-09-CV-02453 |
| **Plaintiff,** | : |
| | : (Judge Conner) |
| v. | : |
| | : |
| **PENNSYLVANIA DEPARTMENT** | : |
| **OF TRANSPORTATION, and** | : |
| **ALLEN BIEHLER,** | : |
| **Defendants** | : |

## MEMORANDUM

Presently before the court in the above-captioned matter are the cross-motions for summary judgment filed by plaintiff David Behar, M.D. ("Behar," or "Dr. Behar") (Doc. 72), and by defendants Allen Biehler and the Pennsylvania Department of Transportation (collectively, "PennDOT") (Doc. 68). The motions have been fully briefed, and are ripe for disposition. For the reasons that follow, Dr. Behar's motion for summary judgment will be denied, and PennDOT's motion for summary judgment will be granted.

## I. Procedural and Factual History

Dr. Behar is a licensed psychiatrist, and has practiced psychiatry in Pennsylvania since 1980, maintaining his practice in the city of Bethlehem. As part of his psychiatry practice, Dr. Behar has participated in a number of federally assisted substance abuse treatment programs. These programs are compensated, at least in part, through Medicaid, and provide treatment for both male and female recovering addicts; some operate as residential programs and others provide treatment through outpatient facilities.

The instant motions arise out of a lawsuit Dr. Behar filed on June 8, 2009. Dr. Behar challenges the constitutionality of the regulations set forth in 67 PA. CODE § 83, which require, *inter alia*, that certain healthcare providers report to PennDOT any individual who suffers from any number of enumerated mental or physical infirmities, which may impair that person's ability to drive a motor vehicle.

Dr. Behar has advanced a number of theories under which the instant regulations are invalid, including that they are preempted by existing federal law under the Supremacy Clause, U.S. CONST. art. VI, cl. 2, that they violate the Due Process Clauses of the Fifth and Fourteenth Amendments, the right to freedom of association under the First and Fourteenth Amendments, privacy rights under the Ninth and Fourteenth Amendments, Article I, § 1 of the Pennsylvania Constitution, The Americans With Disabilities Act, 42 U.S.C. § 12135 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) *et seq.* (See Doc. 1). In his Report and Recommendation (Doc. 37), United States Magistrate Judge William T. Prince recommended that the defendants' motion for judgment on the pleadings (Doc. 18) be granted in part and denied in part. This court adopted Magistrate Judge Prince's recommendation, (see Doc. 52), and dismissed with prejudice all of Dr. Behar's claims save his as applied federal preemption claim.

The parties then entered discovery. On May 27, 2011, PennDOT propounded interrogatories on Dr. Behar requesting, *inter alia*, that he identify any and all patients whom Dr. Behar or another physician had reported or threatened to report to PennDOT, and who subsequently had their driver's licenses suspended or

2

revoked as a result. (See Doc. 63 at 2-5). Dr. Behar opposed this request. After a period of negotiation, PennDOT requested that the court intervene and order a date certain by which Dr. Behar must respond to the interrogatories. On August 2, 2011, the court entered an order directing Dr. Behar to respond to the interrogatories or show cause why he should not be compelled to respond. (See Doc. 61).

On August 5, 2011, Dr. Behar filed a brief in response to the court's show cause order, and an answer to PennDOT's interrogatories. In the brief, he argued that he could not respond to the interrogatories because he could not recall the names of individuals whom he may have reported to PennDOT, and did not have records from which he could ascertain those names. (See Doc. 62 at 1-2). But more fundamentally, Dr. Behar asserted that responding to these interrogatories would force him to violate the very federal law which he argues preempts PennDOT's regulation. He argued that, even if he were in possession of the information PennDOT requested, he could disclose it only in response to a court order. As will be discussed in detail *infra*, federal statutes and regulations prohibit identification of individuals who participate in federally assisted substance abuse programs, absent written consent of the participant or the existence of one of three limited exceptions, none of which are applicable to the facts at hand.

In his answer to PennDOT's interrogatories, Dr. Behar responded that he could not recall any names, that he did not have access to the records of any agencies that may have such information, and that he did not believe that he had

3

divulged any names since at least 2002. (Plaintiff's Answer to Interrogatories, Doc. 63 at 3). In response to an interrogatory requesting the names of all individuals who were *threatened* with disclosure of their protected information to PennDOT, Dr. Behar stated he could not recall any patient names. Id. at 3-4. Dr. Behar also maintained his objection that disclosing this information would violate federal regulations. PennDOT claims to have no record of any improper disclosure of a drug or alcohol treatment program participant, and to have never prosecuted a health care provider for failing to comply with the reporting requirement. (Dolan Decl., Doc. 70-1 at 3).

## II.   **Statutory Background**

When evaluating the constitutionality of a law, the "first step . . . is to construe the challenged statute." United States v. Williams, 553 U.S. 285, 293 (2008). The challenged regulation is part of a comprehensive scheme enacted by the Pennsylvania General Assembly and administered by PennDOT which regulates resident and non-resident drivers in the Commonwealth. PennDOT operates and oversees a broad range of transportation activities, including maintenance of highway and bridge infrastructure, aviation, passenger and freight rail, and public transit services. Of relevance to the instant dispute is PennDOT's authority over driver licensing. 75 PA. STAT. ANN. § 1517 establishes a Medical Advisory Board ("the Board") charged with advising PennDOT and reviewing proposed regulations regarding the physical, mental, and visual standards that should apply to the licensing of drivers. § 1517(b). The board is composed of 13

4

members, including representatives from a number of Commonwealth agencies as well as physicians from the fields of neurology, cardiology, internal medicine, ophthalmology, optometry, psychiatry, orthopaedics, and general medicine. § 1517(a). The Board is empowered to define those disorders that cause "lapses of consciousness" or otherwise create a physical or mental impediment to an individual's ability to drive, which thereby warrant the mandatory reporting requirement out of which this lawsuit arises. § 1518(a). Once formulated, PennDOT may adopt the Board's physical and mental standards for licensing drivers. 67 PA. CODE § 83.1.

Pursuant to 75 PA. STAT. ANN. § 1518(b), "[a]ll physicians, podiatrists, chiropractors, physician assistants, certified registered nurse practitioners, and other persons authorized to diagnose or treat" disorders or disabilities must report in writing, within 10 days of diagnosis, the name, date of birth, and address of every person 15 years of age or older who suffers from one of the disabilities that the Board has determined may interfere with a person's ability to drive. These reports remain confidential with PennDOT, and may only used to determine the patient's fitness to drive. § 1518(d). Reporting healthcare providers are immune from civil or criminal liability under Pennsylvania law for reporting a patient to PennDOT, § 1518(g), but providers who *fail* to report such individuals commit a summary offense and may be fined $25.00, § 6502.

Most of the diagnoses subject to the mandatory PennDOT reporting requirement relate to visual acuity standards, or to ailments that can cause an

5

individual to lose consciousness unexpectedly.  See, e.g., 67 PA. CODE § 83.3 (visual acuity standards, including when corrective lenses may be required); § 83.4 (epilepsy); § 83.5(a)(1) (unstable diabetes); § 83.5(a)(2) (hyper- or hypoglycemia). Healthcare providers are only required to report other disabilities if the provider believes that the condition affects that *particular* patient in a way likely to impair driving ability.  These include mental health issues that may impede a driver's ability to concentrate on the task at hand, § 83.5(b)(5)(i), or that suggest that a driver may be at risk to injure himself or others, § 83.5(b)(5)(ii)-(iii).  The regulations further require that healthcare providers report any patient who reports "[u]se of any drug or substance, including alcohol, known to impair skill or functions, regardless of whether the drug or substance is medically prescribed" if that use is likely to impede their ability to drive.  § 83.5(b)(7).

In contrast with the Pennsylvania regime, federal statutes and regulations impose strict restrictions on when and under what circumstances healthcare providers may disclose identify individuals who participate in federally assisted drug and alcohol substance abuse treatment programs.  This information is protected in order to ensure that a patient undergoing substance abuse treatment "is not made more vulnerable by reason of the availability of his or her patient record than an individual who has an alcohol or drug problem and who does not seek treatment."  42 C.F.R. § 2.3(b)(2).  Section 290dd-2 and its corresponding regulations evince Congress's recognition that confidentiality is a necessary component of successful substance abuse treatment and that, absent this guarantee

6

of confidentiality, individuals who suffer from substance abuse problems may be reticent to participate in treatment programs. See Whyte v. Conn. Mut. Life Ins. Co., 818 F.2d 1005, 1010 (1st Cir. 1987) (discussing congressional intent behind the confidentiality guarantee, previously codified at 42 U.S.C. § 290dd-3).

The restrictions on disclosure apply broadly to any record containing the "identity, diagnosis, prognosis, or treatment" of any patient who suffers from substance abuse problems and is "directly or indirectly assisted" by a federal agency or department. These records must remain confidential, unless the patient consents to disclosure or the disclosure falls within one of three narrow exceptions. 42 U.S.C. § 290dd-2(a)-(b). The Department of Health and Human Services defines "patient" as any person "who has applied for or been given diagnosis or treatment" for a substance abuse problem, whether drug or alcohol-related. 42 C.F.R. § 2.11. The Department defines "disclosure" as a communication containing any patient identifying information, that verifies another's communication of patient identifying information, or that contains *any* information from the record of an identified patient. Id.; see also § 2.12. "Patient identifying information," in turn, broadly includes the "name, address, social security number, fingerprints, photograph, or similar information" that would serve to identify a patient with reasonable accuracy and speed. Id. § 2.11.

A patient's substance abuse record may be disclosed to the extent authorized by prior written consent of the patient, to medical personnel in the event of a bona fide medical emergency, for research purposes provided that no information

identifying the patient is included, or by a court order for good cause shown. § 290dd-2(b)(2). Any person who makes an improper disclosure of information protected under the regulations faces a maximum $500 fine for a first offense, and a maximum $5,000 fine for each subsequent offense. 42 C.F.R. § 2.4.

Each year, PennDOT recalls the licenses of between 10,000 and 12,000 medically unsafe drivers. It does so without the aid of an investigatory branch, relying instead upon healthcare providers' self-reporting. PennDOT assumes that providers are aware of the scope of their reporting obligations, and that they are aware of the penalties of non-compliance. As noted previously, PennDOT asserts that it has never prosecuted a provider for failing to report an individual who participates in a federally assisted drug or alcohol treatment program, and that "[n]o individual participating in a federally assisted drug or alcohol treatment program has ever been improperly reported to PennDOT in violation of the Public Health Service Act." (See Doc. 69 at 3). Dr. Behar can neither confirm nor deny these assertions through his own investigation.

### III. **Standard of Review**

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(a). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex

8

Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(a). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

## IV.  Discussion

In its Memorandum and Order dated March 31, 2011, the court agreed with Magistrate Judge Prince that Dr. Behar did not have standing to challenge the PennDOT regulation in his individual capacity, but he did have third-party standing as a physician to bring an as-applied preemption claim on behalf of his patients. (See generally Doc. 52; see also Doc. 37 at 8 ("Plaintiff can meet the standing requirement as a third-party to challenge the regulation on behalf of his patients.")).

PennDOT revisits its standing argument in its motion for summary judgment. First, it argues that evidence adduced through discovery has vitiated the court's earlier ruling that Dr. Behar has standing to bring an as applied preemption claim, and that in light of this evidence (or, more precisely, lack of evidence) the remaining claim should be dismissed for lack of standing. (See Doc. 71 at 7). Alternatively, PennDOT asserts that the regulations as applied to Dr. Behar are not preempted. (Id. at 12).

Determining constitutional standing is a necessary predicate to a discussion of a case's merits. The judicial power of the United States is limited to "Cases" and "Controversies," and "'Article III standing . . . enforces the Constitution's case-or-controversy requirement.'" Hein v. Freedom From Religion Found., Inc., 551 U.S. 587, 597-98 (2007) (quoting DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006)). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975); see also American Civil Liberties Union of New Jersey v. Township of Wall, 246 F.3d 258, 261 (3d Cir. 2001) ("ACLU-NJ") (standing "'is not merely a troublesome hurdle to be overcome if possible so as to reach the 'merits' of a lawsuit,' but an integral part of the governmental charter established by the Constitution.") (quoting Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 476 (1982)).

The requirements of Article III standing are "familiar." Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 11-12 (2004). The plaintiff must show that he or she suffered an "injury in fact," that the complained-of conduct is the cause of the plaintiff's injury, and that a favorable judgment from the court will redress that injury. Id.; see also Hein, 551 U.S. at 598 ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.") (internal quotation and citation omitted). More precisely, the "irreducible constitutional minimum of standing" consists first of an invasion of a legally protected interest that is (a) concrete and particularized, and

(b) actual and imminent, rather than conjectural or hypothetical. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-562 (1992) (citing Warth, 422 U.S. at 508; Sierra Club v. Morton, 405 U.S. 727, 740-41 (1972); and Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)). Second, the "causal connection between the injury and the conduct complained of" must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Id. at 560 (alterations in original) (internal quotations omitted). Third, it must be "likely" that the injury will be "redressed by a favorable decision." Id. at 560-61. "At bottom, 'the gist of the question of standing' is whether petitioners have 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.'" Massachusetts v. EPA, 549 U.S. 497, 517 (2007) (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)). Dr. Behar carries the burden of establishing the elements of standing, and he must meet that burden "'in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at successive stages of the litigation.'" ACLU-NJ, 246 F.3d at 261 (quoting Lujan, 504 U.S. at 561).

The principal standing dispute between the parties is whether an actual injury exists. The gravamen of defendants' argument is that PennDOT has never prosecuted a healthcare provider for failing to report any individual participating in a federally assisted treatment program, and therefore that any alleged injury on the part of Dr. Behar (for fear of prosecution) or of his patients (for fear of having their

11

confidential information disclosed in violation of federal law) is not sufficiently imminent or credible to satisfy Article III. (See Doc. 71 at 11). PennDOT asserts that it does not require health care providers to identify individuals who are encompassed by the Public Health Services Act's nondisclosure provisions, and has never forced a physician to choose whether to comply with federal law or with state law. (Id.) Further, PennDOT argues that there is no evidence that any patient has *ever* had confidential information improperly disclosed to PennDOT. (Id.)

An injury must be imminent or impending, rather than speculative, to satisfy Article III. See Reilly v. Ceridian Corp., 664 F.3d 38, 42 (3d Cir. 2011) (discussing Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)); see also O'Shea v. Littleton, 414 U.S. 488, 494 (1974) ("Abstract injury is not enough. It must be alleged that the plaintiff 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged statute or official conduct." (quoting Massachusetts v. mellon, 262 U.S. 447, 488 (1923)). The threat must "proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all," id. (quoting Lujan, 504 U.S. at 564 n.2), and must not be "conjectural" or "hypothetical." Id.; see also id. at 43 ("Appellants in this case have yet to suffer any harm, and their alleged increased risk of future injury is nothing more than speculation. As such, the alleged injury is not 'certainly impending.'").

In the instant matter, the record is devoid of evidence that any health care professional has ever violated the federal nondisclosure regulations. Indeed, discovery has closed and Dr. Behar has failed to identify *even a single instance* in which he or any other health care professional disclosed to PennDOT the identity of a patient undergoing treatment in a federally funded drug or alcohol treatment program. Presumably, if this had occurred, Dr. Behar would have easily learned of it through discovery, but he has not produced any such evidence in support of his motion for summary judgment.

Nor is there any evidence that PennDOT has prosecuted a single doctor for failure to comply with the reporting statute. Indeed, PennDOT represents that it does not enforce state law in such a way as to force healthcare providers to violate either state or federal law. (See Dolan Decl., Doc. 70-1 at 2 ("The Department does not require health care providers to disclose the names of individuals protected by the Public Health Service Act . . . .")). Dr. Behar states that, over the years, some patients have expressed concern that their confidential information may be disclosed to PennDOT, and that he was unable to guarantee confidentiality. (See Behar Decl., Doc. 73-1 at 3). But absent any evidence or history of improper disclosures, the preemptive concern of a patient that their confidential information would be improperly disclosed to PennDOT lies wholly in speculation and conjecture.

Dr. Behar sufficiently plead an injury-in-fact, for purposes of a motion to dismiss, when he alleged that his patients may not be fully truthful with him if they

13

were aware that their confidential information could be disclosed to PennDOT. However, at summary judgment, mere allegations are not sufficient: the plaintiff carries the burden to establish standing by the manner and degree of proof commensurate with each "successive stage[] of the litigation." ACLU-NJ, 246 F.3d at 261 (quoting Lujan, 504 U.S. at 561); see also Gonzales v. North Township of Lake county, 4 F.3d 1412, 1415 (7th Cir. 1993) ("At the summary judgment stage, the plaintiff must produce evidence in the form of FED. R. CIV. P. 56(e) affidavits or documents that support the injury allegation."). In failing to present evidence that patients have experienced or imminently will experience an actual injury, Dr. Behar has failed to establish that he has standing to sue, and his claim must therefore be dismissed.

## V. Conclusion

For the reasons previously discussed, Dr. Behar's motion for summary judgment will be denied, and PennDOT's motion for summary judgment will be granted. An appropriate order will issue.

                                                  S/ Christopher C. Conner
                                                  CHRISTOPHER C. CONNER
                                                  United States District Judge

Dated:        February 5, 2013

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID BEHAR, M.D.**, : | Civil Action No. 1-09-CV-02453 |
| Plaintiff, : | |
| : | **(Judge Conner)** |
| v. : | |
| : | |
| **PENNSYLVANIA DEPARTMENT** : | |
| **OF TRANSPORTATION**, and : | |
| **ALLEN BIEHLER**, : | |
| Defendants : | |

## ORDER

AND NOW, this 5th day of February, 2013, upon consideration of the cross-motions for summary judgment filed by defendants Allen D. Biehler and the Pennsylvania Department of Transportation (Doc. 68) and plaintiff David Behar (Doc. 72), and for the reasons discussed in the accompanying Memorandum, it is hereby ORDERED that:

1. Defendants' motion for summary judgment (Doc. 68) is GRANTED.

2. Plaintiff David Behar's motion for summary judgment (Doc. 72) is DENIED.

3. The Clerk of Court is directed to CLOSE the case.

                                            S/ Christopher C. Conner
                                            CHRISTOPHER C. CONNER
                                            United States District Judge